YAAKOV M. ROTH
Acting Assistant Attorney General
DREW C. ENSIGN
Deputy Assistant Attorney General
AARON HENRICKS
Counsel
Office of the Deputy Attorney General
ELIANIS N. PÉREZ
Assistant Director
NICOLE P. GRANT
Senior Litigation Counsel
LUZ M. RESTREPO
VICTORIA TURCIOS
AYSHA IQBAL
Trial Attorneys
Office of Immigration Litigation
General Litigation and Appeals Section

*Attorneys for the United States*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| THE UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> STATE OF ILLINOIS; ILLINOIS DEPARTMENT OF LABOR; JANE FLANAGAN, Director of the Illinois Department of Labor, in her Official Capacity; KWAME RAOUL, Illinois Attorney General, in his Official Capacity, <br><br> Defendants. | No. _____ <br><br><br> **COMPLAINT** |

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

## PRELIMINARY STATEMENT

In this action, the United States seeks a declaration invalidating and preliminarily and permanently enjoining the enforcement of certain provisions of Illinois law. The provisions are preempted by federal law and therefore violate the Supremacy Clause of the United States Constitution.

A primary motivation for illegal immigration is work opportunity. To curtail this, Congress enacted the Immigration Reform and Control Act ("IRCA"), on November 6, 1986.[1] Section 274A(b) of the Immigration and Nationality Act ("INA"), codified in 8 U.S.C. § 1324a(b) requires all employers to verify the identity and employment authorization of their employees. IRCA created the "E-Verify" program to, among other things, provide employers the ability to confirm that their employees are legally authorized to work in the United States. Using E-Verify, an employer can electronically compare information the employer enters from an employee's Form I-9, Employment Eligibility Verification ("Form I-9") to records already available to the Social Security Administration and the U.S. Department of Homeland Security. This verification electronically reviews an employee's eligibility to work in the United States but will also notify the employer of a tentative non-confirmation (called a "mismatch") and prompt for further action by the employee to confirm employment eligibility. By maximizing employer participation in the E-Verify program, the United States is able to reduce economic opportunities for unauthorized aliens seeking to work in the United States unlawfully. Additionally, because E-Verify's effectiveness depends on employer participation, any limitations on new enrollments into the E-Verify program necessarily impedes the Federal Government's ability to evaluate E-Verify's

---

[1] *See* Bruno, Andorra, Cong. Rsch. Serv, RL33973, *Unauthorized Employment in the United States: Issues, Options, and Legislation* (2009) ("It is widely accepted that most unauthorized aliens enter and remain in the United States in order to work.").

utility and effectively enforce the INA's employment eligibility verification requirements. IRCA and the E-Verify program plainly preempt local regulation. Nevertheless, Illinois is now attempting to unlawfully interfere.

In August 2024, Illinois enacted amendments to the state's Right to Privacy in the Workplace Act ("the Workplace Act"). [2] The SB0508 amendments: (1) regulate Illinois employers' use of employment eligibility verification systems; (2) impose restrictions on use of those systems; and (3) provide civil and criminal sanctions for any violations of SB0508. These amendments, which took effect on January 1, 2025 (enacted under Illinois Public Act 103-0879 (SB0508) ("SB0508")), are preempted and should be enjoined because they violate the Supremacy Clause of the U.S. Constitution in at least three ways. *First*, certain provisions of SB0508 are expressly preempted by 8 U.S.C. § 1324a(h)(2), which disallows any state or locality from imposing civil or criminal sanctions on employers of unauthorized aliens (other than through licensing and similar laws). *Second*, the challenged provisions of SB0508 are field preempted because they provide additional regulation in the field of administrative processes governing (1) Form I-9 documentation and inspection, (2) and E-Verify even though Congress has occupied the field. *Third*, the challenged provisions of SB0508 are conflict preempted by IRCA because SB0508 stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress—to root out unauthorized employment and to encourage an employer's voluntary participation in E-Verify.

---

[2] The Workplace Privacy Act was originally enacted in 1991. 1991 Ill. Legis. Serv. P.A. 87-807 (H.B. 1533) (WEST). Illinois added E-Verify provisions to the Workplace Privacy Act in 2007 and they became effective in 2008. 2007 Ill. Legis. Serv. P.A. 95-138 (H.B. 1744) (WEST). Illinois amended the E-Verify provisions in 2009, and those changes became effective in 2010. 2009 Ill. Legis. Serv. P.A. 96-623 (S.B. 1133) (WEST). The most recent amendments in 2025 (SB0508) included changes to Sections 12 and 15 and added Section 13, which targets I-9 inspection processes. For ease of reference in this Complaint, Plaintiff refers to the challenged provisions collectively as "SB0508," although some challenged provisions within Sections 12 and 15 pre-date the 2025 (SB0508) amendments.

The United States has preeminent authority to regulate the administrative processes governing Form I-9 documentation and inspection, and E-Verify. This authority derives from Congress's enactment of IRCA as the Supreme Court has recognized. Illinois therefore has no authority to enforce laws that obstruct or otherwise conflict with federal immigration enforcement efforts by imposing additional regulations, requirements, and possible sanctions on employers that seek to participate in the federal "E-Verify" program. SB0508 has the purpose and effect of deterring employers in Illinois from participating in E-Verify and it usurps the federal government's control of employment eligibility verification. The law therefore violates the Supremacy Clause of the U.S. Constitution and should be enjoined.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

2.      Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because Defendants reside within the Northern District of Illinois and because all of Defendants' acts or omissions giving rise to this Complaint arose from events occurring within this judicial district.

3.      The Court has the authority to provide the relief requested under U.S. Const. art. VI, cl. 2, as well as 28 U.S.C. §§ 1651, 2201, and 2202, and its equitable powers.

## PARTIES

4.      Plaintiff, the United States of America, regulates immigration under its constitutional and statutory authorities and enforces federal immigration laws through its Executive agencies, including the Departments of Justice, State, Labor, and Homeland Security as well as the Department of Homeland Security's ("DHS") component agencies, U.S. Immigration and Customs Enforcement ("ICE"), U.S. Citizenship and Immigration Services ("USCIS"), and U.S. Customs and Border Protection.

5.      Defendant State of Illinois is a state of the United States.

6.      Defendant Illinois Department of Labor ("IDOL") is the state government agency responsible for enforcing Illinois labor and employment laws.

7.      Defendant Jane Flanagan is the Director of IDOL and is being sued in her official capacity.

8.      Defendant Kwame Raoul is Attorney General for the State of Illinois and is being sued in his official capacity.

## LEGAL BACKGROUND

### I.      FEDERAL IMMIGRATION LAW

9.      The Constitution affords Congress the power to "establish a uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3, and affords the President of the United States the authority to "take Care that the Laws be faithfully executed[.]" U.S. Const. art. II, § 3.

10.      The Supremacy Clause of the Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

11.      Generally, a state enactment is expressly invalid where "a federal statute explicitly states that it overrides state or local law." *Aux Sable Liquid Prods. v. Murphy*, 526 F.3d 1028, 1033 (7th Cir. 2008).

12.      A state enactment is also invalid where "federal law so thoroughly occupies a legislative field as to make it reasonable to infer that Congress left no room for the states to act." *Aux Sable Liquid Prods. v. Murphy*, 526 F.3d 1028, 1033 (7th Cir. 2008) (citation omitted).

13.     Additionally, a state enactment is invalid if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941), or if it "discriminate[s] against the United States or those with whom it deals," *South Carolina v. Baker*, 485 U.S. 505, 523 (1988).

14.     Based on its enumerated constitutional and sovereign powers to control and conduct relations with foreign nations, the Federal Government has broad authority to establish immigration laws, the execution of which States cannot obstruct or take discriminatory actions against. *See Arizona v. United States*, 567 U.S. 387, 394–95 (2012); *accord North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality); *id.* at 444–47 (Scalia, J., concurring).

15.     To that end, Congress has exercised its authority to make laws governing the entry, presence, status, and removal of aliens within the United States by enacting various provisions of the INA, 8 U.S.C. § 1101 *et seq.*, the IRCA, Pub. L. No. 99-603, 100 Stat 3359, codified at 8 U.S.C. § 1324a *et seq.*, and other laws regulating immigration.

16.     Congress, through IRCA, has enacted a "comprehensive framework for combating the employment of illegal aliens." *Arizona*, 567 U.S. at 404. IRCA makes it illegal for employers to knowingly hire, recruit, refer, or continue to employ aliens without appropriate work authorization. *See* 8 U.S.C. § 1324a(a)(1)(A), (a)(2). It also requires every employer to verify the employment authorization status of prospective employees. *See id.* § 1324a(a)(1)(B), (b). DHS enforces these requirements through criminal penalties and an escalating series of civil penalties tied to the number of times an employer has violated the provisions. *See id.* §§ 1324a(e)(4), (f).

17.     IRCA also contains an express preemption provision at 8 U.S.C. § 1324a(h)(2), which states that, "[t]he provisions of this section preempt any State or local law imposing civil or

criminal sanctions (other than through licensing and similar laws) upon those who employ, or recruit or refer for a fee for employment, unauthorized aliens."

## II.   THE E-VERIFY PROGRAM

18.   In 1996, Congress authorized the creation of three pilot programs to permit an employer to confirm a new hire's employment eligibility with more accuracy, initially through a toll-free telephone line or other toll-free electronic media. *See* Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") §§ 401-405, Pub. L. 104-208, Div. C, Title IV, Subtitle A, 110 Stat. 3009-655 through 3009-666, codified as a note to 8 U.S.C. § 1324a.

19.   The first such program was referred to as the "Basic Pilot Program." *See* IIRIRA § 403(a). The "Basic Pilot Program" is now renamed "E-Verify" and is the only pilot program that remains in operation.

20.   Congress continued the growth of E-Verify by repeatedly extending the program's operation beyond its planned termination date. *See, e.g.,* Basic Pilot Extension Act of 2001, Pub. L. 107-128, 115 Stat. 2407; Basic Pilot Program Extension and Expansion Act of 2003, Pub. L. 108-156, 117 Stat. 1944-46. Most recently, Congress again extended the E-Verify program until September 30, 2025. Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. 119-4, § 1101(a)(6) (Mar. 15, 2025).

21.   Congress also made clear its objective and purpose to encourage broad participation in E-Verify by instructing DHS to expand E-Verify to all fifty states. *See* Basic Pilot Program Extension and Expansion Act of 2003, Pub. L. 108-156, 117 Stat. 1944-46.

22.     Put simply, E-Verify is a voluntary "free internet-based system that implements the requirements of IIRIRA by allowing any U.S. employer to electronically confirm the employment eligibility of its newly hired employees."[5]

23.     E-Verify is operated by USCIS, but enforcement of IRCA occurs with the cooperation of multiple federal agencies. When E-Verify sends a tentative nonconfirmation notice to an employer, this "flags" the employee to receive a further action notice from the employer and raises the presumption of an unlawful hire if the employer continues to employ the individual after a final nonconfirmation. If a worksite inspection must occur, the inspection is done by Homeland Security Investigations ("HSI"), the investigative branch of ICE. The U.S. Department of Justice's Immigrant and Employee Rights Section within the Civil Rights Division enforces the anti-discrimination provisions of IRCA.

24.     E-Verify compares the information from an employee's Form I-9, Employment Eligibility Verification, with official government records to verify the identity and employment authorization of each newly hired employee, and in some special cases existing employees. *Id.*

25.     Employers must agree to and follow the requirements set forth in the E-Verify Memorandum of Understanding for Employers ("MOU").[6]

26.     In addition to requirements listed in the MOU, employers who choose to participate in E-Verify must follow the guidelines specified in the Rules and Responsibilities Overview of the E-Verify User Manual, which include, *inter alia*: (1) notifying the prospective employees and all employees, including those hired to work in a remote setting, of the employer's E-Verify participation by clearly displaying the Notice of E-Verify Participation and the U.S. Department

---

[5] *E-Verify User Manual* (June 11, 2024), https://www.e-verify.gov/book/export/html/2113 ("E-Verify Manual") (last visited Apr. 29, 2025).
[6] E-Verify Memorandum of Understanding for Employers (revised June 1, 2013), https://www.e-verify.gov/sites/default/files/everify/memos/MOUforEVerifyEmployer.pdf (last visited Apr. 29, 2025).

of Justice, Immigrant and Employee Rights Section's Right to Work posters in English and Spanish (this can include displaying the posters digitally, online, in hard copy at physical locations), and providing a copy of the posters with job application materials; and (2), providing each employee with notice of and the opportunity to take action on a Tentative Nonconfirmation (mismatch). *See* E-Verify User Manual.

27.     The E-Verify User Manual also provides that employers who choose to participate in E-Verify must not, *inter alia*, : (1) use E-Verify to discriminate against any job applicant or employee on the basis of his or her national origin, citizenship, or immigration status; (2) use E-Verify to discriminate against someone on the basis of race, color, religion, sex (pregnancy), national origin, age (40 or over), disability, or genetic information; (3) take adverse action against or terminate an employee because he or she received a mismatch result, unless E-Verify issues a case result of Final Nonconfirmation. *Id.*

28.     Pursuant to the MOU, "DHS may terminate [the MOU], and thereby the Employer's participation in E-Verify, with or without notice at any time if deemed necessary because of the requirements of law or policy. . . or a failure on the part of the Employer to comply with established E-Verify procedures and/or legal requirements."

29.     E-Verify's effectiveness depends on employer participation. Obstacles to employers' continued participation in E-Verify, including but not limited to, any limitations on new enrollments in E-Verify, impede the Federal Government's ability to evaluate E-Verify's utility and effectively enforce the INA's employment eligibility verification requirements. Additionally, E-Verify provides USCIS, and in turn HSI, with leads for potential further investigation.

30. Enrollment in Illinois is particularly important as guidelines published in 1997 identified Illinois as one of the five states with the highest estimated populations of illegal aliens and, therefore, solicited employers in Illinois to participate in E-Verify. *See* Pilot Programs for Employment Eligibility Confirmation, 62 Fed. Reg. 48,309 (Sept. 15, 1997). Indeed, Illinois remains one of leading states of residence for illegal aliens in 2022. *See* Bryan Baker and Robert Warren, *Estimates of the Unauthorized Immigrant Population Residing in the United States: January 2018–January 2022*, Office of Homeland Security Statistics, U.S. Department of Homeland Security, https://ohss.dhs.gov/sites/default/files/2024-06/2024_0418_ohss_estimates-of-the-unauthorized-immigrant-population-residing-in-the-united-states-january-2018%25E2%2580%2593january-2022.pdf (last visited Apr. 30, 2025).

### III. FORM I-9 INSPECTION PROCESS

31. In addition to requiring employers to verify the identity and employment eligibility of their employees, the provisions enacted under IRCA also require employers to document the employment eligibility verification they have conducted on a Form I-9 (a form used by employers in the United States to verify the identity and employment eligibility of individuals they hire), retain it for certain specified periods, and make the form available for inspection by HSI, the U.S. Department of Labor, or the U.S. Department of Justice's Immigrant and Employee Rights Section. 8 U.S.C. § 1324a(b)(3); 8 C.F.R. § 274a.2(b)(2).

32. These inspections are preceded by a notice issued by the inspecting entity to the employer three business days prior to the inspection. 8 C.F.R. § 274a.2(b)(2).

33. The purpose of the inspection is to ensure that the employer is meeting its obligations to verify the identity and employment authorization of its employees and ultimately, to ensure that the employees are not working unlawfully in the United States. *See* U.S. Immigration

Customs and Enforcement, Fact Sheets, Form I-9 Inspection, available at: https://www.ice.gov/factsheets/i9-inspection (last visited Apr. 29, 2025).

## CHALLENGED PROVISIONS OF SB0508

34.     SB0508, which amended the Illinois's "Right to Privacy in the Workplace Act," took effect on January 1, 2025.

35.     As amended, SB0508 discourages the use of E-Verify, frustrates innovation of employment eligibility verification, and obfuscates E-Verify and Form I-9 inspection requirements by adding layers of protection for employees and imposing onerous and confusing notice requirements for Illinois employers beyond those required under the federal E-Verify program and the INA. Additionally, SB0508 allows the Illinois Department of Labor and employees to commence actions in an Illinois circuit court to enforce these new amendments.

36.     The Illinois circuit court will impose penalties for those employers found to have violated these requirements, including fines, costs, reasonable attorney's fees, and actual damages.

37.     The requirements of SB0508 created a considerable amount of confusion among employers, as certain provisions imply that employers are prohibited from using E-Verify for employment verification. To address the confusion, IDOL, in the Frequently Asked Questions section on their website, clarified that SB0508 does not prohibit the voluntary use of E-Verify: "May Illinois employers choose to voluntarily use E-Verify? Yes. Illinois law does not prohibit any employer from using E-Verify. However, employers who use E-Verify must follow the requirements of the Right to Privacy in the Workplace Act." *See* Right to Privacy in the Workplace/E-Verify Frequently Asked Questions, https://labor.illinois.gov/faqs/right-to-privacy-

in-the-workplace-e-verify.html#faq-4mayillinoisemployerschoosetovoluntarilyuseeverify-faq

(last visited Apr. 29, 2025).

38. Section 12(c) of SB0508 outlines violations for employers participating in E-Verify and Basic Pilot Programs. It prohibits: (1) not posting required DHS and OSC notices in a visible location; (2) allowing untrained employees to use the verification system; (3) permitting credential sharing to bypass training; (4) using the system to screen or verify individuals before hiring or completing Form I-9; (5) taking adverse action against employees before receiving final nonconfirmation; (6) failing to notify individuals in writing about tentative nonconfirmation, how to contest it along with the relevant government agency contact information needed to resolve it and; (7) not protecting system information and access credentials.

39. Section 13(b) of SB0508 provides that an employer shall not impose work authorization verification or re-verification requirements greater than those required by federal law.

40. Section 13(c) of SB0508 states that if an employer claims a discrepancy in an employee's verification information, the employer must provide the employee with: (1) specific documents deemed by the employer to be deficient and the reason for the deficiency (upon request, the original should be provided within 7 days); (2) instructions on how the employee can correct the alleged deficiency "if required to do so by law"; (3) an explanation of the employee's right to have a representative present during related communications with the employer "if allowed by a memorandum of understanding concerning the federal E-Verify system"; and (4) an explanation of any other rights.

41. Section 13(d) of SB0508 provides that when an employer receives notification from any federal or State agency of a discrepancy, the employee has the following rights: (1) the

employer must not take any adverse action, including re-verification, based on receipt of the notification; (2) the employer must provide notice to the employee and, if allowed by the E-Verify MOU, to the employee's authorized representative (defined as "an exclusive collective bargaining representative"), if any, as soon as practicable but not more than 5 business days after the receipt of the notification; and (3) the employee may have a representative of the employee's choosing in any meetings, discussions, or proceedings with the employer.

42. <u>Section 13(e) of SB0508</u> provides that except as otherwise required by federal law, an employer must provide notice to all current employees of any Form I-9 inspections or inspections of other employment records within 72 hours after receiving notice of the inspection. Additionally, this section provides that an employer must provide written notice to an employee's authorized representative, if any, within 72 hours after receiving notice of the inspection. The notice itself must contain the name of the entity conducting the Form I-9 inspection, the date that the employer received notice of the inspection, the nature of the inspection (to the extent the employer knows this), and a copy of the notice the employer received informing that an inspection will occur. The provision also provides that an employer, "upon reasonable request," shall provide the employee a copy of the actual notice the employer received informing that an I-9 inspection will occur.

43. <u>Section 13(g) of SB0508</u> is an amendment that states that if an inspecting entity makes a determination that the employee's work authorization documents do not establish that the employee is authorized to work in the United States, except as otherwise required by federal law, the employer must provide a written notice within 5 business days informing the employee of the following: (1) an explanation that the inspecting entity has determined that the employee's work authorization documents presented by the employee do not appear valid; (2) the time period for

the employee to notify the employer whether he or she is contesting the determination; (3) if known by the employer, the time and date of any meeting with employer and employee or with the inspecting entity relating to the correction of the employee's work authorization documents; and (4) notice that the employee has the right to representation during any meeting scheduled with the employer and the inspecting entity. Additionally, if an employee contests the inspecting entity's determination that his or her work authorization documents do not establish that he or she is authorized to work in the United States, the employer must notify the employee within 72 hours after receipt of any final determination by the inspecting entity in this regard.

44.     Section 13(h) of SB0508 provides that, unless the Federal Government provides express and specific direction otherwise, the Director of IDOL may bring civil actions against employers in any Illinois circuit court for failing to provide the notices described.

45.     Section 15(b-d) of SB0508 states that if an employer violates SB0508, an employee or applicant for employment may commence an action in an Illinois circuit court to enforce the provisions, including actions to compel compliance where conciliation or persuasion by IDOL have failed. Failure to comply with an order of the court may be punished as contempt.

46.     In addition, SB0508 §§ 15(d) provides that the court shall award an employee prevailing in an action under SB0508 the following: (1) actual damages plus costs; (2) for willful and knowing violations, $200 plus costs, reasonable attorney's fees, and actual damages; (3) for willful and knowing violations of Section 12(c) or 12(c-2) of SB0508, $500 per affected employee plus costs, reasonable attorney's fees, and actual damages; and (4) for willful and knowing violations of Section 13, a civil penalty of a minimum of $2,000 and up to $5,000 for first violation and a civil penalty of a minimum of $5,000 up to a maximum of $10,000 for each subsequent

violation, plus costs, reasonable attorney's fees, and actual damages. The penalties relating to Section 13 are part of the recent amendments to SB0508.

47.     Section 15(e) of SB0508 provides that any employer or prospective employer or his agent who violates the provisions of SB0508 is guilty of a petty offense.

48.     Section 15(f) of SB0508 provides that any employer or prospective employer or his agent who discharges or in any other manner discriminates against any employee or applicant for employment because that employee or applicant has made a complaint to his employer or caused or is about to cause any proceeding under or related to, SB0508 is guilty of a petty offense.

49.     Under Illinois law, the penalty for committing a petty offense is a fine of a minimum of $75 and a maximum up to $1000. 730 Ill. Comp. Stat. § 5-4.5-75(a).

50.     The Workplace Act's attempts to obstruct federal law are not surprising given its history. In 2009, the District Court for the Central District of Illinois found that one of the provisions, Section 12(a), frustrated "Congress' purpose by prohibiting Illinois employers from participating in [what is now called E-Verify]" unless certain Illinois-imposed standards for accuracy and speed were met. *United States v. Illinois*, No. 07-3261, 2009 WL 662703, at *2 (C.D. Ill. Mar. 12, 2009). The District Court accordingly struck down that provision, holding that Section 12(a) of the Workplace Act was invalid because it violated the Supremacy Clause of the United States Constitution. *Id.* at *3.

## SB0508 IS PREEMPTED BY FEDERAL LAW

51.     State laws are preempted when they conflict with federal law. *Arizona*, 567 U.S. at 399. When Congress acts within the scope of its constitutional authority, it may expressly or impliedly preempt otherwise permissible state action under the Supremacy Clause, which provides that federal law "shall be the supreme Law of the Land; and the Judges in every State shall be

bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

52.    Express preemption occurs when Congress, through statutory language, explicitly supersedes all state enactments in a particular area. *P. Gas and Elec. Co. v. State Energy Resources Conserv. & Develop. Comm'n*, 461 U.S. 190, 203–04 (1983).

53.    Implied "field preemption" occurs when a "scheme of federal regulation [is] so pervasive as to make reasonable the inference that Congress left no room to supplement it," or where the "federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947).

54.    Conflicts can also arise when a state law forms an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines*, 312 U.S. at 67.

55.    The goals of the INA's employment eligibility verification provisions are clear—to compel employers to verify employment eligibility and encourage the use of E-Verify to help ensure that all aliens who are working in the United States are authorized to do so.

56.    By imposing confusing rules during the employment verification process and threatening employers with penalties if they do not comply, SB0508 discourages and obfuscates the use of E-Verify and Form I-9 inspection requirements. Specifically, SB0508 imposes additional notification requirements on employers (at times delineating the time, place, and way notification must be provided) and prohibitions that go beyond federal law. SB0508 also imposes sanctions on employers for failure to adhere to those requirements with civil fines as high as $10,000. Not only are these fines inconsistent with federal law, but such advance notice

requirements could prompt an alien employee to not show up to work on the day of inspection or avoid detection by immigration authorities.

57.     Because the challenged SB0508 provisions form an obstacle to the implementation of the INA (and its corresponding regulations) and the use of E-Verify, they are necessarily preempted.

58.     Accordingly, the "nature of the power exerted by Congress, the object sought to be attained, and the character of the obligations imposed by the law, are all important in considering the question of whether supreme federal enactments preclude enforcement of state laws on the same subject." *Id.* at 70.

59.     Examining Congress's authority to enact 8 U.S.C. § 1324a, its object in doing so, the character of these provision, and the direct nexus between SB0508 and the INA provisions, can only lead to one conclusion: under the *Hines* standard these "federal enactments preclude enforcement of" SB0508 as it focuses "on the same subject."

60.     As noted in *Arizona,* a core goal of IRCA is the "deterrence of unlawful employment" by illegal aliens and Congress's primary vehicle for achieving this is to task employers with verifying eligibility for employment. 567 U.S. at 405-06. The first two provisions of 8 U.S.C. § 1324a make these points perfectly clear.

61.     Pursuant to the very first section (8 U.S.C. § 1324a(a)(1)(A)) it is unlawful to hire an illegal alien, while the next section makes it unlawful to hire an employee without verifying eligibility (8 U.S.C. § 1324a(a)(1)(B)).

62.     The INA sets out precise instructions on the records that an employer must examine before hiring an employee. 8 U.S.C. § 1324a(b).

63. Importantly, the President of the United States has the authority to monitor and evaluate employment eligibility verification systems. *Id.* § 1324a(d).

64. Understanding the need for a whole of government approach to timely effective countermeasures to prevent illegal aliens from competing against lawful workers, Congress created a detailed and elaborate process by which the President is to monitor and report on developments in the workforce. *Id.*

65. Additionally, Congress has set out detailed provisions for ensuring compliance, conducting investigations, levying fines, and, where appropriate, imposing criminal sanctions for violations of the INA with respect to the employment eligibility verification process. *See* 8 U.S.C. §§ 1324a; 1324b.

66. Considering these purposes and goals, SB0508 is preempted in at least three ways.

67. First, SB0508 is expressly preempted by federal law because it imposes criminal and civil penalties on employers, *see* SB0508 §§ 13(h), 15(b)–(f), in violation of 8 U.S.C. § 1324a(h)(2) which prohibits "any State or local law imposing civil or criminal sanctions (other than through licensing and similar laws) upon those who employ, or recruit or refer for a fee for employment, unauthorized aliens."

68. Second, SB0508 attempts to enforce additional regulation in the field of the administrative processes governing Form I-9 documentation and inspection, as well as E-Verify. This is impermissible as Congress has determined that this field must be regulated by its exclusive governance, and thus, Illinois may not enact laws in this field which are "inconsistent[] with the purpose of Congress, conflict or interfere with, curtail or complement, the federal law, or enforce additional or auxiliary regulations." *Arizona*, 567 U.S. at 404. SB0508 is, therefore, subject to field preemption.

69.     Finally, SB0508 stands as an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines* 312 U.S. at 67, to root out unauthorized employment. Here, those objectives are to compel employers to verify employment eligibility (with the underlying objective to eliminate unauthorized employment) and to encourage the use of E-Verify.

70.     SB0508 frustrates the goals of Congress by requiring employers who are using E-Verify or who are engaged in the I-9 documentation and inspection process to comply with additional notification requirements (at times delineating the time, place, and way notification must be provided) and prohibitions that go beyond what is mandated under Federal law.

71.     SB0508 also frustrates Congressional intent by imposing sanctions on an employer for his or her failure to adhere to those requirements. The sanctions are notably inconsistent with federal law. Specifically, these sanctions create civil and criminal liability for employers who fail to adhere to the additional requirements and prohibitions that SB0508 sets out concerning the employment eligibility verification process and impose civil fines as high as $10,000 for employers who violate these provisions.

72.     The challenged SB0508 provisions also stifle employment eligibility verification innovation.

73.     Additionally, the challenged SB0508 provisions relating to the 72-hour advance notification of an impending Form I-9 inspection obstructs Congress's goal to ensure lawful employment in the United States under 8 U.S.C. § 1324a. Such advance notice is inconstant with federal law and could prompt an employee who is working unlawfully not to show up to work on the day of inspection or to abscond indefinitely in order avoid detection by immigration authorities.

## CLAIMS FOR RELIEF

### COUNT ONE

### VIOLATION OF THE SUPREMACY CLAUSE
### (EXPRESS PREEMPTION)

74. Plaintiff hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

75. IRCA preempts "any State or local law imposing civil or criminal sanctions (other than through licensing and similar laws) upon those who employ, or recruit or refer for a fee for employment, unauthorized aliens." 8 U.S.C. § 1324a(h)(2).

76. Sections 13(h) and 15(b)–(f) of SB0508 impose civil and criminal sanctions on employers of unauthorized aliens.

77. 8 U.S.C. § 1324a(h)(2) preempts the Sections 13(h) and 15(b)–(f) of SB0508.

78. Because Sections 13(h) and 15(b)–(f) of SB0508 violate the Supremacy Clause, they are invalid.

### COUNT TWO

### VIOLATION OF THE SUPREMACY CLAUSE
### (FIELD PREEMPTION)

79. Plaintiff hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

80. IRCA created an obligatory national system for employers to verify whether their newly hired employees are authorized to work in the United States. 8 U.S.C. § 1324a.

81. Although participation in E-Verify is voluntary, employers must follow certain administrative processes during the Form I-9 inspection process and when using E-Verify. 8 U.S.C. § 1324a, note Sec. 403(a).

82.     Failure to adhere to these administrative processes subject an employer to federal civil sanctions. *Id*.

83.     Congress, through Section 1324a, set forth a comprehensive "framework of regulation 'so pervasive . . . that Congress left no room for the States to supplement it,'" even through "complementary state regulation." *Arizona*, 567 U.S. at 399, 401 (cleaned up) (internal citations omitted).

84.     Field preemption thus precludes Defendants from seeking to regulate conduct—with the exception of licensing and similar laws—in the administrative processes governing (1) Form I-9 documentation and inspection, and (2) E-Verify.

85.     The challenged provisions of SB0508 nevertheless purport to impose additional requirements (SB0508 §§ 12(c), 13) and create civil and criminal liability (SB0508 §§ 13(h), 15(b)–(f)) for an employer's failure to adhere to the administrative requirements governing Form I-9 documentation, inspection, and use of E-Verify.

86.     The challenged provisions of SB0508 are preempted under the doctrine of field preemption.

87.     Both on their face and as applied to the Federal Government, the challenged provisions of SB0508 violate the Supremacy Clause and are thus invalid.

## COUNT THREE

### VIOLATION OF THE SUPREMACY CLAUSE
### (CONFLICT PREEMPTION)

88.     Plaintiff hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

89.     Congress enacted IRCA with the goal of preserving jobs for lawful workers and disincentivizing illegal immigration.

90.　Federal law requires employers to verify the employment eligibility of employees.

91.　E-Verify is a voluntary and electronic method of verifying the employment eligibility of employees.

92.　SB0508 disincentivizes employers' use of E-Verify by imposing burdens and penalties that go far beyond what is contemplated in the federal statute and regulations, which are also reflected in the E-Verify manual and Employer MOU.

93.　SB0508 disincentivizes employers' use of E-Verify by imposing criminal and civil penalties on employers who violate SB0508.

94.　SB0508 stifles E-Verify innovation by making static the processes governing an employer's obligations with respect to its use, and conflicts with legally authorized uses of E-Verify to confirm employment eligibility of certain existing employees by limiting E-Verify use only to newly hired employees.

95.　SB0508 also encourages unlawful employment of aliens in the United States.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests the following relief:

1.　That this Court enter a judgment declaring that the challenged provisions of SB0508 violate the Supremacy Clause and are therefore invalid;

2.　That this Court enter a judgment declaring that the challenged Provisions of the SB0508 violate the INA and are therefore invalid; That this Court issue preliminary and permanent injunctions that prohibit Defendants as well as their successors, agents, and employees, from enforcing the challenged provisions of SB0508;

3.　That this Court award the United States its costs and fees in this action; and

4.　That this Court award any other relief it deems just and proper.

DATED: May 1, 2025                    Respectfully submitted,


YAAKOV M. ROTH                        NICOLE P. GRANT
Acting Assistant Attorney General     Senior Litigation Counsel
                                      Office of Immigration Litigation
                                      General Litigation and Appeals Section
DREW C. ENSIGN
Deputy Assistant Attorney General
                                      LUZ M. RESTREPO
                                      VICTORIA TURCIOS
AARON HENRICKS                        AYSHA IQBAL
Counsel                               Trial Attorneys
Office of the Deputy Attorney General Office of Immigration Litigation
                                      General Litigation and Appeals Section

                                      By: */s/ Elianis N. Pérez*_____
                                      ELIANIS N. PÉREZ
                                      Assistant Director
                                      United States Department of Justice
                                      Office of Immigration Litigation
                                      General Litigation and Appeals Section
                                      P.O. Box 868
                                      Ben Franklin Station
                                      Washington, DC 20044
                                      Telephone: (202) 616-9124
                                      Fax: (202) 305-7000
                                      Email: elianis.perez@usdoj.gov

                                      *Attorneys for the United States*