# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

THE UNITED STATES OF AMERICA,

        Plaintiff,

  v.

STATE OF ILLINOIS; ILLINOIS
DEPARTMENT OF LABOR; JANE
FLANAGAN, Director of the Illinois
Department of Labor, in her Official Capacity;
KWAME RAOUL, Illinois Attorney General, in
his Official Capacity,

        Defendants.

No. 1:25-cv-04811

Honorable Judge Sharon Johnson Coleman

## MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................2

I.  Preemption Doctrine ...................................................................................2

II. The Federal Framework Governing Immigration and the Employment Eligibility
    Verification Process ....................................................................................3

    A.  Immigration Reform and Control Act of 1986 .................................3

    B.  The Form I-9 Inspection Process .....................................................4

    C.  E-Verify ..........................................................................................4

III. Illinois SB0508 ..........................................................................................7

    A.  Notification Requirements and Prohibitions.....................................7

    B.  Consequences of SB0508 Violations ...............................................9

LEGAL STANDARD .............................................................................................9

ARGUMENT .......................................................................................................10

I.  The United States is Likely to Prevail on the Merits ................................10

    A.  SB0508 is Expressly Preempted by Federal Law ...........................10

    B.  SB0508 is Also Field Preempted ...................................................13

    C.  SB0508 Frustrates Congress's Objectives .....................................18

II. Enforcement of the Challenged SB0508 Provisions Will Cause Irreparable Harm..23

III. The Balance of Harms and Public Interest Weigh in Favor of Injunction.................25

CONCLUSION ....................................................................................................27

CERTIFICATE OF SERVICE ..............................................................................28

i

# TABLE OF AUTHORITIES

## CASE LAW

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
    559 F.3d 1046 (9th Cir. 2009) ............................................................. 24

*Arizona v. United States*,
    567 U.S. 387 (2012) ................................................................... *passim*

*Blackie's House of Beef, Inc. v. Castillo*,
    659 F.2d. 1211 (D.C. Cir. 1981) .......................................................... 23

*Chamber of Com. of U.S. v. Edmondson*,
    594 F.3d 742 (10th Cir. 2010) ......................................................... 12, 13

*Chamber of Com. of U.S. v. Whiting*,
    563 U.S. 582 (2011) ................................................................... 11, 22

*Cook Cnty., Illinois v. Wolf*,
    962 F.3d 208 (7th Cir. 2020) ............................................................. 25

*Courthouse News Serv. v. Brown*,
    908 F.3d 1063 (7th Cir. 2018) .......................................................... 9, 10

*Crosby v. Nat'l Foreign Trade Council*,
    530 U.S. 363 (2000) ...................................................................... 20

*Freightliner Corp. v. Myrick*,
    514 U.S. 280 (1995) ...................................................................... 18

*Ga. Latino All. for Hum. Rts. v. Gov. of Ga.*,
    691 F.3d 1250 (11th Cir. 2012) ........................................................... 14

*GEFT Outdoors, LLC v. City of Westfield*,
    922 F.3d 357 (7th Cir. 2019) ............................................................. 10

*Hines v. Davidowitz*,
    312 U.S. 52 (1941) ....................................................................... 18

*I.N.S. v. Nat'l Ctr. for Immigrants' Rts., Inc.*,
    502 U.S. 183 (1991) ...................................................................... 21

*Int'l Ass'n of Machinists Dist. Ten & Loc. Lodge v. Allen*,
    904 F.3d 490 (7th Cir. 2018) ............................................................. 11

*Kansas v. Garcia*,
 589 U.S. 191 (2020) ............................................................................ 14, 17, 22

*Lambert v. Buss*,
 498 F.3d 446 (7th Cir. 2007)................................................................................ 9

*Life Spine, Inc. v. Aegis Spine, Inc.*,
 8 F.4th 531 (7th Cir. 2021) ............................................................................ 23

*McHenry Cnty. v. Raoul*
 44 F.4th 581 (7th Cir. 2022) ........................................................................ 14

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
 491 U.S. 350 (1989) ...................................................................................... 24

*Nken v. Holder*,
 556 U.S. 418 (2009) ...................................................................................... 25

*Pac. Gas and Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*,
 461 U.S. 190 (1983) ...................................................................................... 10

*Rice v. Santa Fe Elevator Corp.*,
 331 U.S. 218 (1947) ...................................................................................... 14

*Small v. Avanti Health Sys., LLC*,
 661 F.3d 1180 (9th Cir. 2011)...................................................................... 25

*Speech First, Inc. v. Killeen*,
 968 F.3d 628 (7th Cir. 2020)........................................................................ 10

*Sure–Tan, Inc. v. NLRB*,
 467 U.S. 883 (1984) ...................................................................................... 21

*United States v. Alabama*,
 691 F.3d 1269 (11th Cir. 2012).................................................................... 13

*United States v. Arizona*,
 641 F.3d 339 (9th Cir. 2011)................................................................... 24, 25

*United States v. Illinois*,
 No. 07-3261, 2009 WL 662703 (C.D. Ill. Mar. 12, 2009).......................... 20

*United States v. Texas*,
 97 F.4th 268 (5th Cir. 2024) ........................................................................ 14

*Winter v. Natural Resources Defense Council, Inc.*,
  555 U.S. 7 (2008) ........................................................................... 23

*Wyeth v. Levine*,
  555 U.S. 555 (2009) ............................................................... 14, 18

## FEDERAL STATUTES

8 U.S.C. § 1324a ................................................................... *passim*

8 U.S.C. § 1324a(a)(1)(A) ...................................................... 3, 4, 21

8 U.S.C. § 1324a(a)(1)(B) ...................................................... 3, 4, 15

8 U.S.C. § 1324a(a)(2) ............................................................ 3, 4, 21

8 U.S.C. § 1324a(b) ................................................................... 3, 15

8 U.S.C. § 1324a(b)(1)(A)-(D) ....................................................... 15

8 U.S.C. § 1324a(b)(1)(B) ............................................................. 15

8 U.S.C. § 1324a(b)(3) ......................................................... *passim*

8 U.S.C. § 1324a(d)(1)(A) .............................................................. 6

8 U.S.C. § 1324a(e) ..................................................................... 20

8 U.S.C. § 1324a(e)(4) ................................................................... 3

8 U.S.C. § 1324a(e)(5) ................................................................... 3

8 U.S.C. § 1324a(f) ................................................................... 3, 20

8 U.S.C. § 1324a(f)(1) ................................................................... 4

8 U.S.C. § 1324a(h)(2) ......................................................... *passim*

## FEDERAL REGULATIONS

8 C.F.R. § 274a.2 ............................................................. 15, 19, 20

8 C.F.R. § 274a.2(a)(2) ................................................................. 4

8 C.F.R. § 274a.2(b)(2) ................................................................ 4, 15, 19

## LEGISLATIVE HISTORY

H.R. Rep. No. 99-682 ..................................................................... 3

## PUBLIC LAW

Pub. L. No. 99-603 ......................................................................... 1, 24

Pub. L. No. 104-208 ....................................................................... 5

Pub. L. No. 114-74 ......................................................................... 3

## FEDERAL REGISTER

69 Fed. Reg. 75,997-03 .................................................................. 5

90 Fed. Reg. 1 ............................................................................... 3

## ILLINOIS LEGISLATIVE HISTORY

Ill. Legis. Serv. P.A. 87-807 .......................................................... 7

Ill. Legis. Serv. P.A. 95-138 .......................................................... 7

Ill. Legis. Serv. P.A. 96-623 .......................................................... 7

## ILLINOIS PUBLIC LAW

Ill. Pub. Act 95-138 ...................................................................... 1

Ill. Pub. Act 103-0879, Codified at 820 ILCS 55/12-15 ..................... 1, 7

## MISCELLANEOUS

Dep't of Homeland Security, *E-Verify User Manual* available at https://www.e-
verify.gov/book/export/ html/2113 (last visited May 5, 2025) ............................................. 5, 6

Dep't of Homeland Security, *The E-Verify Memorandum of Understanding for Employers* available at https://www.everify.gov/sites/default/files/everify/memos/MOUforEVerify Employer.pdf (last visited May 5, 2025) .......................................................................... 6, 8, 19

# INTRODUCTION

In August 2024, Illinois enacted amendments to the state Right to Privacy in the Workplace Act (originally enacted into law by Illinois Public Act 95-138). The amendments in Illinois Public Act 103-0879 ("SB0508"), codified at 820 ILCS 55/12-15, became effective on January 1, 2025. SB0508 is preempted by federal law and must be enjoined.

The SB0508 amendments: (1) regulate Illinois employers' use of employment eligibility verification systems; (2) impose restrictions on use of those systems; and (3) provide civil and criminal sanctions for any violations of SB0508. Sections 12(c), 13(b)-(e), (h), 15(b)-(d) of SB0508 impermissibly infringe on the federal government's exclusive authority to regulate the administrative actions an employer must take during the Form I-9 Employment Eligibility Verification ("Form I-9") and inspection process. The challenged provisions of SB0508 frustrate the federal government's immigration enforcement efforts by creating additional requirements, liabilities, and fines for Illinois employers during the employment eligibility verification process, particularly for employers who voluntarily enroll in E-Verify. In essence, Illinois has made compliance with *federal* law a burden under *state* law and has imposed state civil liability through that state law. Moreover, Illinois has codified a state law that divests from the federal scheme and therefore precludes the ability of the federal government to uniformly enforce and regulate the administrative process of employment verification and inspection. *See* Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, § 115(1), 100 Stat 3359, 338 (codified at 8 U.S.C. § 1324a *et seq.*)*,* ("IRCA" or "Section 1324a") ("the immigration laws of the United States should be enforced vigorously and uniformly.").

The United States seeks to enjoin enforcement of SB0508's challenged provisions. The Court should grant Plaintiff's request for an injunction because Plaintiff is likely to succeed on the

merits, traditional legal remedies are inadequate, and Plaintiff will suffer irreparable harm in the absence of an injunction. The United States' case easily satisfies these elements. *First*, Sections 13(h) and 15(b)–(f) of SB0508 are expressly preempted by the plain language of 8 U.S.C. § 1324a(h)(2) which prohibits state and local governments from imposing civil and criminal sanctions on employers of unauthorized aliens. A narrow exception applies to this general prohibition, but it is not implicated here. *Second*, SB0508 is preempted because Congress has enacted a comprehensive framework of laws that is so pervasive as to leave no room for Illinois to promulgate its own regulations in the field of administrative processes governing (1) Form I-9 documentation and inspection, and (2) E-Verify. *Third*, SB0508 is conflict-preempted because it creates obstacles to the enforcement of federal immigration law and the use of E-Verify. Accordingly, the Court should enjoin SB0508 because it is preempted by federal law.

## BACKGROUND

### I. Preemption Doctrine

The Supremacy Clause of the Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. Statutes enacted by Congress may preempt—either expressly or impliedly—otherwise permissible state action. *See United States v. Arizona*, 567 U.S. 387, 399 (2012).

Critically, the Constitution vests the federal government with exclusive and plenary authority to establish the nation's immigration policy. *See* U.S. Const., art. I, § 8, cl. 4 (Congress has the authority to "establish an uniform Rule of Naturalization"); U.S. Const., art. I, § 8, cl. 3 (Congress has the authority to "regulate Commerce with foreign Nations"); *see also* U.S. Const., art. II, § 3 (vesting the President with the authority to "take Care that the Laws be faithfully executed"). Indeed, "federal power to determine immigration policy is well settled." *Arizona*, 567

U.S. at 395; *id.* at 394 ("The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens."). Congress's general authority over immigration is supplemented by the Executive's "inherent power as sovereign to control and conduct relations with foreign nations." *Id.* at 395.

## II. The Federal Framework Governing Immigration and the Employment Eligibility Verification Process

### A. Immigration Reform and Control Act of 1986

When Congress enacted the Immigration Reform and Control Act of 1986, it set out to combat the employment of aliens not lawfully present in the United States. H.R. REP. 99-682, 45-46 ("The bill establishes penalties for employers who knowingly hire undocumented aliens, thereby ending the magnet that lures them to this country."). IRCA makes it illegal for employers to knowingly hire, recruit, refer, or continue to employ aliens without appropriate work authorization. *See* 8 U.S.C. § 1324a(a)(1)(A), (a)(2). It also requires that employers verify the employment authorization status of prospective employees. *See id.* § 1324a(a)(1)(B), (b).

The United States Department of Homeland Security ("DHS") is charged with the enforcement of federal immigration laws, including the provisions under IRCA. DHS enforces IRCA's requirements through criminal penalties and an escalating series of civil penalties tied to the number of times an employer has violated the provisions. *See* 8 U.S.C. § 1324a(e)(4), (f). For example, Section 1324a(e)(4)(A) imposes a civil penalty on employers who violate subsections (a)(1)(A) or (a)(2). The statutory civil penalty begins between $250 to $2,000 per unauthorized alien for the first violation and grows to $3,000 to $10,000 per unauthorized alien for an employer who was previously subject to more than one order finding a violation. *Id.* § 1324a(e)(4)(i)–(iii).[1]

---

[1] For ease of reference this Motion refers to the civil money penalties as statutorily enacted in 1986, but plaintiff notes that they are now substantially higher due to inflationary adjustments pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74. *See, e.g.*, Dept. of Homeland Security, Final Rule, Civil Money Penalty Adjustments for Inflation, 90 Fed. Reg. 1 (Jan. 2, 2025).

Similarly, Section 1324a(e)(5) imposes a civil penalty on employers who fail to verify the work authorization of aliens as required by Section 1324a(a)(1)(B). The penalties imposed may be between $100 and $1,000 per unauthorized alien. Additionally, Section 1324a(g)(2) imposes civil penalties ($1,000 for each violation) on individuals who, after notice and an opportunity for administrative hearing, are found in violation of Section 1324a(g)(1)[2]. IRCA also empowers the Attorney General of the United States to bring a civil action against an employer who is engaged in a pattern or practice of violating paragraphs (1)(A) or (2) of subsection (a).

IRCA's criminal penalties apply to employers who repeatedly violate subsections (a)(1)(A) or (a)(2). *Id.* § 1324a(f)(1). These penalties carry a fine of not more than $3,000 and imprisonment for not more than a period of six months for the entire "pattern or practice, or both[.]" *Id.*

### B. The Form I-9 Inspection Process

Relatedly, federal law requires employers to document the employment eligibility verification they have conducted on a Form I-9 submitted by a prospective employee. 8 U.S.C. § 1324a(b)(3); 8 C.F.R. § 274a.2(a)(2). Employers must retain Form I-9s and make them available for inspection by DHS, the Department of Justice, and the Department of Labor. 8 U.S.C. § 1324a(b)(3). These inspections are preceded by a notice issued by the inspecting entity to the employer three business days prior to the inspection. 8 C.F.R. § 274a.2(b)(2). Employers must also retain Form I-9s and make them available for inspection by former employees for a period of at least three years from the first day of employment or one year from the date employment ends, whichever is later. *Id.*

### C. E-Verify

In 1996, Congress authorized the creation of a pilot program to assist employers in meeting their legal obligation under Section 1324a to verify the employment eligibility of their employees.

---

[2] Section 1324a(g)(1) prohibits an employer from, *inter alia*, accepting a bond or security as a financial guarantee against potential liability arising from violations of Section 1324a.

4

The pilot program originally consisted of a toll-free telephone line and other toll-free electronic media. *See* Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") §§ 401-405, Pub. L. 104-208, Div. C, Title IV, Subtitle A, 110 Stat., §§ 3009-655 through 3009-666, codified as a note to 8 U.S.C. § 1324a. This program originally was referred to as the "Basic Pilot Program," and is now renamed as "E-Verify." Participation in E-Verify was and still is voluntary for employers.[3] *See* 8 U.S.C. § 1324a, note Sec. 402(a).

E-Verify was initially offered to only select states with the highest estimated numbers of illegal aliens, including Illinois. *See* 8 U.S.C. § 1324a, note § 401(c)(1). On December 20, 2004, U.S. Citizenship and Immigration Services published a notice in the Federal Register announcing the expansion of the Basic Pilot Program to all fifty states and the introduction of an internet-based verification process. *See* Expansion of the Basic Pilot Program to All 50 States and the District of Columbia; Providing Web-Based Access, 69 Fed. Reg. 75,997-03 (Dec. 20, 2004).

E-Verify enables any U.S. employer to electronically review the employment eligibility of its newly hired employees. *See* 8 U.S.C. § 1324a, note § 404; E-Verify User Manual, Section 1.1 ("E-Verify Manual").[4] E-Verify operates by comparing the information from an employee's Form I-9 with official government records that E-Verify can access to confirm the identity and employment eligibility of each newly hired employee, and in some cases existing employees. *Id.*

Employers who receive a tentative nonconfirmation of an individual's identity or work eligibility from E-Verify must comply with certain requirements. *See* 8 U.S.C. § 1324a, note § 403. First, employers are required to notify the individual for whom the confirmation is sought that they received a tentative nonconfirmation notice ("TNC"). *See id.* § 403(a)(4)(B)(i). An employee can contest the nonconfirmation notice and attempt to resolve the discrepancy. *See id.*

---

[3] Employers with federal contracts or subcontracts that contain the Federal Acquisition Regulation E-Verify clause are required to enroll in and use E-Verify as a condition of federal contracting. Employers with employees in states with legislation that require participation in E-Verify may also be required to participate in E-Verify as a condition of state licensing or contracting. E-Verify Manual, Section 1.1.

[4] Available at https://www.e-verify.gov/book/export/html/2113 (last visited May 7, 2025).

§§ 403(a)(4)(B)(iii), 404(c). Employers may not terminate an employee until a nonconfirmation notice becomes final. *Id.* § 403(a)(4)(B)(iii). If, after receiving a final nonconfirmation notice, an employer does not terminate the individual's employment, the employer must notify DHS of the continued employment. *Id.* § 403(a)(4)(C)(i). An employer who fails to inform DHS that it continues to employ an individual for whom a final nonconfirmation notice was issued faces civil penalties ranging from $500 to $1000. *Id.* § 403(a)(4)(C)(ii).

Employers who choose to use E-Verify must also sign and agree to follow guidelines set forth in the E-Verify Memorandum of Understanding for Employers ("MOU"). U.S. Department of Homeland Security, *The E-Verify Memorandum of Understanding for Employers*.[5] The E-Verify User Manual sets forth other guidelines that employers must be familiar with and follow.[6] For example, employers who participate in the E-Verify program must, among other things, notify prospective employees and all current employees of their E-Verify participation by clearly displaying a Notice of E-Verify Participation poster, as well as a related poster, written in English and Spanish and created by the Department of Justice, Immigrant and Employee Rights Section. *See* E-Verify Manual, Section 1.5. This display can be presented in various ways including online and at physical locations. *Id.*

Employer participation in E-Verify, though largely voluntary, is vital to the federal government's statutory obligation to continually evaluate its utility (*see* 8 U.S.C. § 1324a(d)(1)(A)) and enforce the employment eligibility verification requirements under Section 1324a.

---

[5] Available at https://www.e-verify.gov/sites/default/files/everify/memos/MOUforEVerifyEmployer.pdf (last visited May 7, 2025).
[6] *See supra* note 4.

### III.    Illinois SB0508

SB0508[7], an amendment to the state Right to Privacy in the Workplace Act, was enacted in August 2024 and became effective on January 1, 2025. Illinois Public Act 103-0879, codified at 820 ILCS 55/12-15. SB0508 created regulations and liabilities for Illinois employers with respect to their obligation under federal law to verify the employment authorization of their employees, specifically where it concerns the Form I-9 inspection process and E-Verify.

### A.    Notification Requirements and Prohibitions

SB0508 imposes a myriad of notification requirements on employers. For example, Section 12(c) of the state law only permits E-Verify use for "newly hired employees" and makes it a violation for an employer who is enrolled in an employment eligibility verification system to fail to display required DHS and Department of Justice notices in the workplace for employees. It is also a violation under SB0508 Section 12(c) for an employer to fail to notify an individual—in writing—of an employer's receipt of a TNC and of the individual's right to contest it. Similarly, Section 13(c) requires an employer to provide an employee with notice if an employer discovers a discrepancy in an employee's verification information. These notices must contain the reason for the deficiency, instructions on how to correct the alleged deficiency "if required to do so by law," and the employee's right to involve a representative. The employer must also provide the employee with an explanation of any other rights he or she may have.

Additionally, under SB0508 Section 13(d), when an employer receives notification from any federal or state agency of a discrepancy, an employer must provide notice to the employee of the discrepancy not more than five business days after the employer receives notice of the

---

[7] The Workplace Privacy Act was originally enacted in 1991. 1991 Ill. Legis. Serv. P.A. 87-807 (H.B. 1533) (WEST). Illinois added E-Verify provisions to the Workplace Privacy Act in 2007 and they became effective in 2008. 2007 Ill. Legis. Serv. P.A. 95-138 (H.B. 1744) (WEST). Illinois amended the E-Verify provisions in 2009, and those changes became effective in 2010. 2009 Ill. Legis. Serv. P.A. 96-623 (S.B. 1133) (WEST). The most recent amendments in 2025 (SB0508) included changes to Sections 12 and 15 and added Section 13, which targets I-9 inspection processes. For ease of reference in this Complaint, Plaintiff refers to the challenged provisions collectively as "SB0508," although some challenged provisions within Sections 12 and 15 pre-date the 2025 (SB0508) amendments.

discrepancy. The employer must also provide notice to the employees' authorized representative within the same five-day timeframe so long as such representation is allowed by the E-Verify MOU.

Section 13(e) also creates notice requirements regarding Form I-9 inspections. This section mandates that unless otherwise required by federal law, an employer must provide notice to all current employees of any Form I-9 inspections or inspections of other employment records within 72 hours after receiving notice of the inspection. The employer must also provide written notice to an employee's authorized representative, if any, within 72 hours after receiving notice of the inspection. The employer must also disclose the identity of the entity that will be conducting the inspection, the nature of the inspection (to the extent the employer knows this), the date that the employer received notice of the inspection, and a copy of the notice the employer received informing that an inspection will occur. If the employee requests it, the employer must also provide the employee with the actual notice he or she received informing them that an I-9 inspection will occur.

If after an inspection, the inspecting entity determines that an employee's work authorization documents do not establish that he or she is authorized to work in the United States, Section 13(g) requires an employer to make additional notifications. This includes written notice to the employee within five business days explaining the inspecting entity's determination, a timeframe within which an employee should notify the employer that he or she contests the determination, and the time and date of any meeting scheduled with the inspecting entity. The employer must also notify the employee of his or her right to have representation during any meeting scheduled with the employer and the inspecting entity. If an employee contests the inspecting entity's determination, the employer must notify the employee within 72 hours after receipt of any final determination by the inspecting entity concerning the employee's work authorization.

8

In addition to notification requirements, SB0508 imposes other obligations on employers. For example, Section 13(b) prohibits employers from imposing work authorization verification or re-verification requirements "greater than those required by law." Section 13(d) also prohibits employers from taking any adverse action against the employee based on receipt of a TNC.

### B. Consequences of SB0508 Violations

Violations of SB0508 can result in a civil action against the employer initiated by the Illinois Department of Labor ("IDOL") under Section 13(h). Sections 15(b)–(d), provide a mechanism for an employee or an applicant for employment to commence an action against an employer in Illinois state court to enforce the provisions in SB0508 including actions to compel compliance. Under these provisions, a prevailing employee in an action is also entitled to (1) actual damages plus costs; (2) $200 plus costs, reasonable attorney's fees, and actual damages for willful and knowing violations; (3) $500 per affected employee plus costs, reasonable attorney's fees, and actual damages for willful and knowing violations of certain parts of Section 12 of SB0508; and (4) a civil penalty of a minimum of $2,000 and up to $5,000 for the first violation and a civil penalty of a minimum of $5,000 up to a maximum of $10,000 for each subsequent violation, plus costs, reasonable attorney's fees, and actual damages for willful and knowing violations of Section 13 of SB0508. Section 15(e) imposes criminal liability on employers for violations of SB0508. Specifically, Section 15(e) makes it a petty offense for an employer or prospective employer to violate SB0508. The penalty for a petty offense is a fine anywhere between $75 and $1000. 730 ILCS Section 5-4.5-75(a).

## LEGAL STANDARD

A preliminary injunction is warranted where, as here, the movant has established that: (1) it is likely to succeed on the merits; (2) it has no adequate remedy at law; and (3) it will suffer irreparable harm if the relief is not granted. *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018); *Lambert v. Buss*, 498 F.3d 446, 451 (7th Cir. 2007).

If the moving party meets this three-element threshold, the court "must weigh the harm that the plaintiff will suffer absent an injunction against the harm to the defendant from an injunction." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (internal citation and quotations omitted); *Courthouse News Serv.*, 908 F.3d at 1068. If the plaintiff seeking a preliminary injunction is likely to win on the merits, the balance of harms need not weigh as heavily in his favor. *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020) (indicating that the Seventh Circuit takes a sliding scale approach with respect to the balance of harms). In balancing the harms, the court also considers the public interest. *Id.*

## ARGUMENT

### I. The United States is Likely to Prevail on the Merits

The SB0508 provisions at issue in this case are preempted and invalid under each of the preemption doctrines. *First*, Sections 13(h) and 15(b)–(f) of SB0508 are expressly preempted by 8 U.S.C. § 1324a(h)(2). *Second*, SB0508 is preempted because Congress has enacted a comprehensive framework of laws that is so pervasive as to leave no room for Illinois to promulgate its own regulations in the field of administrative processes governing (1) Form I-9 documentation and inspection, and (2) E-Verify. *Third*, SB0508 is conflict-preempted because it creates obstacles to the enforcement of federal immigration law and the use of E-Verify.

#### A. SB0508 is Expressly Preempted by Federal Law

Express preemption occurs when Congress, through statutory language, explicitly supersedes all state enactments in a particular area. *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 203–04 (1983). As recognized by the Supreme Court, IRCA contains an express preemption provision that, "in most instances bars States from imposing penalties on employers of unauthorized aliens[.]" *Arizona*, 567 U.S. at 406. Although it is silent about penalties on employees themselves, Section 1324a(h)(2) "preempt[s] any State or local law imposing civil or criminal sanctions (other than through licensing and similar laws) upon those

who employ, or recruit or refer for a fee for employment, unauthorized aliens." Here, Sections 13(h) and 15(b)–(f) of SB0508 impose both criminal and civil penalties on employers of unauthorized aliens in direct violation of 8 U.S.C. § 1324a(h)(2).

IRCA does not prohibit a State from enacting or enforcing *any* sanctions on an employer of unauthorized aliens—so long as the provision is not otherwise preempted. However, Congress expressly cabined the States' authority of those sanctions to "licensing and similar laws." 8 U.S.C. § 1324a(h)(2). So long as state regulation of the employment of aliens is restricted to licensing, it is not preempted by IRCA. *See Chamber of Commerce of the United States v. Whiting*, 563 U.S. 582, 600 (2011) ("Arizona's licensing law falls well within the confines of authority Congress chose to leave to the States and therefore is not expressly preempted."). Although the Seventh Circuit has not considered the scope of Section 1324a(h)(2) at length, it has briefly acknowledged this narrow exception in Section 1324a(h)(2) as solely for licensing purposes. *See Int'l Ass'n of Machinists Dist. Ten & Loc. Lodge v. Allen*, 904 F.3d 490, 506–07 (7th Cir. 2018) (stating that 8 U.S.C. § 1324a(h)(2) "permits States to impose 'civil or criminal sanctions' on 'those who employ . . . unauthorized aliens' *provided this is done 'through licensing and similar laws*.'" (emphasis added) (quoting 8 U.S.C. § 1324a(h)(2)).

The Supreme Court discussed the narrow "licensing and similar laws" exception in *Whiting*. There, Arizona employers who knowingly employed unauthorized aliens were subject to a court order which directed State agencies to temporarily (and in some cases, permanently) suspend all business licenses held by the employer. 563 U.S. at 591–92. The Supreme Court found that "Arizona's licensing law [fell] well within the confines of the authority Congress chose to leave to the States and therefore [was] not expressly preempted." *Id.* at 600. The Arizona law at issue in *Whiting* stands in contrast to SB0508. Section 13(h) of SB0508 provides a mechanism for IDOL to commence a civil action against an employer who violates SB0508. Sections 15(b)–(f) of SB0508 impose both criminal and civil penalties on employers of unauthorized aliens which

11

clearly do *not* involve licensing or similar laws. Black's Law Dictionary defines a license as "[a] privilege granted by a state or city upon the payment of a fee, the recipient of the privilege then being authorized to do some act or series of acts that would otherwise be impermissible." LICENSE, Black's Law Dictionary (12th ed. 2024).

Neither Sections 13(h) nor 15(b)–(f) of SB0508 impose any suspension, restriction, revocation (or the like), on an employer's privilege or authorization to do business when they violate SB0508. Instead, these provisions subject an employer to civil liability, impose monetary fines for noncompliance with SB0508, subject an employer to payment of actual damages, costs, reasonable attorney's fees, and even make an employer guilty of a petty offense. *See* SB0508 §§ 13(h) (providing IDOL may commence civil action against an employer); *id.* §15(d)(4) (an employer who violates Section 13 is subject to a civil penalty of $2,000 to $5,000 for a first violation, and $5,000 to $10,000 for subsequent violations per affected employee (plus costs, reasonable attorney's fees, and actual damages)); *id.* § 15(d)(1)–(3) (an employer who fails to comply with a court order related to SB0508 violations is subject to contempt, actual damages, costs, reasonable attorney's fees, and other specified monetary awards); *id.* § 15(e)–(f) (making an employer who violated SB0508 guilty of a petty offense). These sanctions do not involve an employer's business license at all.  As such, the consequences for noncompliance contained in Sections 15(b)–(f) of SB0508 cannot be accurately described as "licensing or similar laws."

Moreover, SB0508's imposition of fines and petty offenses constitute "sanctions" as contemplated by 8 U.S.C. § 1324a(h)(2) ("The provisions of this section preempt any State or local law imposing civil or criminal sanctions (other than through licensing and similar laws) upon those who employ, recruit or refer for a fee for employment, unauthorized aliens."). In *Chamber of Commerce of the United States v. Edmondson*, the Tenth Circuit considered an Ohio law regulating *inter alia*, the employment eligibility verification of unauthorized aliens. 594 F.3d 742, 754–55 (2010). The Ohio law subjected employers to cease and desist orders, reinstatement, back pay,

costs, and attorneys' fees for engaging in the "discriminatory practice" of firing a U.S. citizen or lawful permanent resident while retaining an employee that the employing entity knew or reasonably should have known, was an unauthorized alien. *Id.* at 754. The Tenth Circuit found that "[s]uch impositions are 'restrictive measures' that fall within the meaning of 'sanctions' as used in § 1324a(h)(2). This conclusion is consistent with use of the term 'sanction' in other provisions of federal law." *Id.* at 765. Here, the consequences described in SB0508 § 15(b)–(f) are correctly described as "sanctions" on employers of unauthorized aliens because they serve as restrictive measures meant to punish employers for noncompliance with SB0508. *Edmondson*, 594 F.3d at 765 ("Penalties are ordinarily understood as serving punitive purposes."); *United States v. Alabama*, 691 F.3d 1269, 1291–92 (11th Cir. 2012) (holding that an Alabama law which provided a civil cause of action for recovery of compensatory damages, costs and attorneys' fees against employers of unauthorized aliens was expressly preempted by Section 1324a(h)(2)).

In sum, Sections 13(h) and 15(b)–(f) of SB0508 impose criminal and civil penalties on employers of unauthorized aliens. Those penalties constitute sanctions which are not accomplished through "licensing or similar laws." Instead, those sanctions make an employer of unauthorized aliens subject to civil liability, monetary fines between $2,000 and $10,000, subject to contempt and actual damages, and potentially guilty of a petty offense. *See* SB0508 §§ 13(h), 15(b), (c), (d)(4), (d)(1)–(3), (e)–(f). As such, Sections 13(h) and 15(b)–(f) are expressly preempted by 8 U.S.C. § 1324a(h)(2).

### B.  SB0508 is Also Field Preempted

Apart from Sections 13(h) and 15(b)–(f) being expressly preempted by Section 1324a(h)(2), SB0508 is field preempted by Congress's pervasive regulation in the field of administrative processes governing (1) Form I-9 documentation and inspection, and (2) E-Verify. Implied field preemption occurs when a "scheme of federal regulation [is] so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," or where the

13

"federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947); *see also McHenry Cnty. v. Raoul*, 44 F.4th 581, 589 (7th Cir. 2022) ("State law is preempted 'when federal law occupies a 'field' of regulation 'so comprehensively that it has left no room for supplementary state legislation.'") (citations omitted). In both field and conflict-preemption cases, courts must assess congressional intent, "start[ing] with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (citations omitted).

"States are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance." *Arizona*, 567 U.S. at 399. Applying this principle here, with the exception of licensing and similar laws, SB0508 is precluded from regulating conduct in the following narrowly defined field that federal law occupies[8]: the administrative processes governing Form I-9 documentation and inspection and E-Verify. *Kansas v. Garcia*, 589 U.S. 191, 208 (2020) ("In order to determine whether Congress has implicitly ousted the states from regulating in a particular field, we must first identify the field in which this is said to have occurred."); *see generally Arizona*, 567 U.S. at 400–01 (defining the relevant field as "alien registration"); *United States v. Texas*, 97 F.4th 268, 279 (5th Cir. 2024) (defining the relevant field as "immigration policies concerning entry into and removal from the United States"); *Ga. Latino All. for Hum. Rts. v. Gov. of Ga.*, 691 F.3d 1250, 1263 (11th Cir. 2012) (defining relevant field as "the transportation, concealment, and inducement of unlawfully present aliens"); *see also Texas*, 97 F.4th at 278 ("When analyzing field preemption, 'the relevant field should be defined narrowly.'").

---

[8] The field as argued here is confined to the employment eligibility verification process and does not purport to include other areas covered by federal immigration law.

The relevant field here is the administrative processes governing (1) Form I-9 documentation and inspection, and (2) E-Verify. IRCA created an obligatory national system for employers to verify whether their newly hired employees are authorized to work in the United States. 8 U.S.C. § 1324a(a)(1)(B), (b); 8 C.F.R. § 274a.2. These detailed provisions require employers conducting the verification process to examine an employee's documentation establishing both their identity and their employment authorization, and to attest, under penalty of perjury, that the employer has verified that the individual is not an unauthorized alien. 8 U.S.C. § 1324a(b)(1)(A)-(D). An employer must document this information on a Form I-9, retain the form on paper or electronically for three years from the first day of employment or one year from the date employment ends, whichever is longer, and make this form available for government inspection. *Id.* § 1324a(b)(3); 8 C.F.R. § 274a.2(b)(2). Failure to adhere to these requirements subjects an employer to civil sanctions between $100-$1,000 for "each individual with respect to whom such violation occurred." *Id.* § 1324a(b)(5). Nowhere in these federal provisions and regulations that govern the administrative process for the Form I-9 documentation and inspection does it say employers must notify employees of any discrepancies in their documentation or that a government entity would be conducting a Form I-9 inspection.

With respect to E-Verify legislation, which was introduced under IIRIRA and now appears as notes in IRCA under Section 1324a, employers must follow certain administrative processes when using E-Verify. 8 U.S.C. § 1324a, note § 403(a). Among other things, employers must obtain additional information to include on the Form I-9, namely a social security number or an identification or authorization number if the employee is not a U.S. citizen. *Id.* The employer must also ensure that an employee who submits a § 1324a(b)(1)(B) document has a photo. *Id.* The employer must create an E-Verify case for each newly hired employee no later than the third business day after he or she starts work for pay. *Id.* The employer must adhere to a specific administrative process when a TNC notice is generated. *See supra*, Section II.C. Notably, if a final

15

nonconfirmation notice is generated, the employer must either terminate that employee's employment or inform the federal government that the employee continues to be employed. *Id.* The only civil penalty imposed on an employer in the E-Verify provisions is for his or her failure to inform the federal government that he or she continues to employ an individual that was issued a final nonconformation notice. *Id.* That penalty is anywhere between $500 to $1000 for each individual with respect to whom such violation occurred. *Id.*

Through Section 1324a and the E-Verify provisions contained therein, the federal government has set up a comprehensive "framework of regulation 'so pervasive . . . that Congress left no room for the States to supplement it,'" even through "complementary state regulation." *Arizona*, 567 U.S. at 399, 401 (cleaned up) (internal citations omitted). Yet, SB0508 impermissibly usurps the field and alters it by imposing additional notification requirements and civil and well as criminal penalties for "violations" of SB0508 provisions that closely track Section 1324a.

For example, SB0508 specifically states that it is a violation for employers who are enrolled in an employment eligibility verification system, including E-Verify, to take adverse actions against employees based on a TNC notice. SB0508 § 12(c)(5). SB0508 also makes it a violation when an employer does not notify an employee in writing of an employer's receipt of a TNC notice, the employee's right to contest the TNC notice, and the contact information for the relevant government agency or agencies that the individual must contact to resolve the TNC. *Id.* § 12(c)(6). The willful and knowing violation of these provisions subjects an employer to $500 fines per affected employees *plus* costs, reasonable attorney's fees, and actual damages. *Id.* § 15(d)(3).

SB0508's Section 13 goes as far as to impose additional notification and other administrative requirements during the I-9 documentation and inspection process. For example, Section 13(c) requires an employer to, among other things: notify an employee that there is a discrepancy in the verification information, provide the reason for the deficiency, provide instructions on how to correct the deficiency "if required to do so by law," provide an explanation

16

of the employee's right to have representation in related meetings, and provide the actual document forming the basis for the deficiency, if available, within seven business days.

Likewise, Section 13(d) contains several notification requirements on employers who receive notification from a federal or state agency of a discrepancy as it relates to an employee's work authorization with delineations as to the time, place, and manner in which notification must be provided.

Section 13(e) requires an employer to provide notice to employees that a Form I-9 inspection will take place within 72 hours after the employer receives notice that such inspection will occur and requires specific information in that notice such as who the inspecting entity is and the nature of the inspection.

An employer's failure to adhere to the additional burdensome requirements under Section 13 of SB0508 can result in an escalating scale of civil penalties of up to $10,000 for willful and knowing violations, specifically contingent on the number of violations. SB0508 § 15(d)(4). Notably, all violations of SB0508 can result in a finding that the employer committed a petty offense. SB0508 § 15(e). A petty offense under Illinois law can subject an employer to a fine of anywhere between $75 and $1000. 730 ILCS Section 5-4.5-75(a).

While SB0508 tracks the language of Section 1324a, SB0508 impermissibly imposes additional requirements and creates civil and criminal liability for an employer's failure to adhere to the administrative requirements governing Form I-9 documentation and inspection and E-Verify under IRCA and that are mirrored in SB0508. This case is distinguishable from *Kansas v. Garcia*, a recent Supreme Court opinion in which several individuals convicted of fraudulently using another person's social security number on federal and state tax withholding forms unsuccessfully argued that IRCA preempted the state statutes under which they were convicted. *Kansas*, 589 U.S. at 198, 203-13. There, the Supreme Court rejected the theory that IRCA preempted the field of fraud on the federal employment eligibility verification system because the submission of tax-

withholding forms is not part of that system. *Id.* at 208-10. Rather, this case is analogous to *Arizona*. In *Arizona*, the Supreme Court found that federal law preempted an Arizona statute that replicated alien registration requirements and added state-law penalties for conduct proscribed under federal law as it related to alien registration requirements. *Arizona*, 567 U.S. at 400-02. Here, Congress promulgated extensive administrative processes in Section 1324a regarding (1) Form I-9 documentation and inspection, and (2) E-Verify. SB0508 seeks to regulate the same field by imposing requirements on employers' use of employment eligibility verification systems (Section 12), restrictions on their use of the same (Section 13), and impose sanctions for violations of SB0508 (Section 15).

IRCA thus unequivocally field preempts SB0508's challenged provisions.

### C. SB0508 Frustrates Congress's Objectives

Implied conflict preemption can occur where the state law creates an obstacle to a federal statutory purpose. *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995); *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941); *Arizona*, 567 U.S. at 399–400 ("[S]tate laws are preempted when they conflict with federal law. This includes cases where . . . the challenged state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'") (citation omitted). In deciding whether a law is conflict preempted, courts must consider congressional intent, "start[ing] with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth*, 555 U.S. at 565 (citations omitted).

SB0508's challenged provisions, in imposing additional restrictions and notification requirements and its own penalties with respect to the administrative processes of Form I-9 documentation and inspection, as well as E-Verify (*supra* § I.B.), "conflict with the careful framework Congress adopted." *Arizona*, 567 U.S. at 402. Take for instance Section 1324a's lack of sanctions on employers for not notifying employees of a TNC, and its imposition of sanctions

on employers for not notifying the federal government of their continued employment of individuals who received final non confirmation notices. 8 U.S.C. § 1324a, note § 403(a)(4)(B), (C). In direct contrast to this, SB0508 imposes sanctions on employers who fail to notify employees of a TNC. SB0508 §§ (12)(c)(6), 15(d)(3).

Additionally, Section 1324a does not require employers to notify employees of an impending Form I-9 inspection by a government entity, but SB0508 sanctions an employer for not doing so. *Compare* 8 U.S.C. § 1324a(b)(3), (e), (f) *with* SB0508 §§ (13)(e), 15(d)(4); *see also* 8 C.F.R. § 274a.2(b)(2). SB0508 also imposes several notification requirements on employers in situations where an inspecting entity determines that an employee's work authorization documents do not establish that he or she is authorized to work in the United States, with delineations as to the time, place, and way notification must be provided. SB0508 § 13(g). An employer risks sanctions and a petty offense conviction if he or she does not comply. SB0508 § 15(d), (e). Yet, such requirements and sanctions are absent in Section 1324a and its implementing regulations. *See* 8 U.S.C. § 1324a; 8 C.F.R. § 274a.2.

Other examples further highlight the conflict that the challenged provisions under SB0508 create with Congressional intent by imposing additional requirements and/or penalties beyond what exist in the federal statute. For instance, Section 12(c)(1) of SB0508 states that it is a sanctionable violation if an employer fails to display required DHS and other agency notices, but neither IRCA nor the notes that appear in IRCA concerning E-Verify require this; it is only required under the E-Verify MOU and it's not sanctionable if an employer does not adhere to the requirement. *See* 8 U.S.C. § 1324a; E-Verify MOU, Article II.A; *see also* SB0508 § 15(b)–(d) (subjecting employers who violate any part of SB0508 to an administrative complaint against him or her or, an investigation conducted by IDOL, federal court litigation, contempt charges, actual damages plus costs, and—for willful and knowing violations—additional fines and reasonable attorney's fees).

19

Section 13(c) of SB0508 states that if an employer contends that there is a discrepancy in the verification information an employee presents, that employer must not only notify an employee of the discrepancy, but must also, among other things, provide instructions on how to correct the deficiency "if required to do so by law," and provide an explanation of the employee's right to have representation in related meetings or else risk sanctions. Similarly, Section 13(d) imposes several notification requirements on employers who receive notification from a federal or state agency of a discrepancy as it relates to an employee's work authorization with delineations as to the time, place, and way notification must be provided. Yet, none of these additional requirements or sanctions are contemplated under IRCA or any of its implementing regulations. *See* 8 U.S.C. § 1324a; 8 C.F.R. § 274a.2.

Section 13 violations notably result in additional sanctions on top of those imposed for violations of any section under SB0508, including an escalating scale of civil penalties of up to $10,000 for a willful and knowing violation, contingent on the number of violations. SB0508 § 15(d)(4). Moreover, all violations of SB0508 can result in a finding that the employer committed a petty offense, subjecting that employer to a fine of anywhere between $75 and $1000. SB0508 § 15(e); 730 ILCS Section 5-4.5-75(a). This contrasts sharpy with Section 1324a, which imposes criminal penalties solely for employers that engage in a pattern or practice violations of (a)(1)(A) or (a)(2) of that section, which directly concern unlawful employment of aliens not the administrative processes involved in the I-9 inspection process or E-Verify.

What Illinois has created through SB0508 is "not the system Congress created[.]" *Arizona*, 567 U.S. at 408. The "inconsistency of sanctions" between Section 1324a and SB0508 "undermines the congressional calibration of force." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 380 (2000). The goal of 8 U.S.C. § 1324a is simple: to compel employers to verify employment eligibility—in line with Congressional intent to eliminate unauthorized alien employment—and to encourage the use of E-Verify. *See Arizona*, 567 U.S. at 404; *United States*

20

*v. Illinois*, No. 07-3261, 2009 WL 662703, at *2 (C.D. Ill. Mar. 12, 2009) ("Congress put [E-Verify] in place to allow all employers access to a means to verify the employment eligibility of new hires."). At the heart of this Congressional goal is the desire to preserve jobs for American workers. *I.N.S. v. Nat'l Ctr. for Immigrants' Rts., Inc.*, 502 U.S. 183, 194 (1991) ("We have often recognized that a 'primary purpose in restricting immigration is to preserve jobs for American workers.'" (citing *Sure–Tan, Inc. v. NLRB*, 467 U.S. 883, 893 (1984)). Congress considered and put in place a carefully reticulated scheme of requirements and penalties.

The state law here is seeking to add to those requirements, necessarily disturbing their balance and making it less likely that employers will voluntarily comply. The state law, essentially, has made E-Verify compliance more challenging and has raised the hurdles for employers to implement this system. The civil and criminal sanctions, liability, and a myriad of new restrictions, notice and procedural requirements under SB0508 clearly reveal its intent and effect: to complicate the employment eligibility verification process and to force employers using E-Verify or any other employment eligibility verification system to comply with regulations and liabilities above and beyond those imagined by the federal system. *See generally* 8 U.S.C. § 1324a. These sanctions and additional state hurdles make it less likely that Illinois employers will use E-Verify, frustrating the purpose of Section 1324a, which seeks to deter and eliminate unauthorized employment in the United States.

Furthermore, Section 13(e) obstructs Congress's intent to eradicate unlawful employment of aliens in the United States. This recently added provision gives an employer a state-sanctioned opportunity to notify employees as much as 72 hours in advance that an inspection by immigration officials will take place. SB0508 § 13(e). The amendment also requires an employer to inform the employees which entity will be conducting the inspection and the nature of the inspection, if known to the employer. *Id.* Such advance notice could prompt an employee who is working unlawfully, without or even *with* an employer's knowledge, not to show up to work on the day of inspection,

21

and to abscond indefinitely in order avoid detection by immigration authorities. Such an employee's absence would further benefit an employer (or middle management for an employer) that was knowingly hiring aliens without work authorization, as there would be virtually no evidence for an inspecting entity—such as U.S. Immigration and Customs Enforcement—to evaluate or find, should an inspection turn into an enforcement operation. This provision thus directly obstructs Congress's purpose of ensuring lawful employment in the United States. Indeed, if obstructing federal immigration enforcement is not the point of the advanced-warning provision, it is difficult to understand what is.

This case is distinguishable from *Chamber of Commerce*, where the Arizona law at issue "went the extra mile in ensuring that its law closely tracks IRCA's provisions in all material respects" and its only deviation was through the licensing provisions it was allowed to enact under Section 1324a(h)(2)'s savings clause. *Chamber of Comm.*, 563 U.S. at 600-01. This case is also distinguishable from *Kansas v. Garcia*, where the Supreme Court found that the prosecutions for fraud under the state statutes at issue did not conflict with IRCA given its silence regarding criminal prosecution for using false identity in tax withholding forms, other federal laws criminalizing fraudulent information on federal tax-withholding forms, and the States' historic responsibility to carry out criminal law enforcement. *Kansas*, 589 U.S. at 211-12. Rather, this case is more like *Arizona*, in that the Court can infer—at the very least from the plain language of the statute—that Congress, in enacting Section 1324a and the E-Verify provisions under IIRIRA, declined the imposition of additional notification obligations on employers and related sanctions, and that SB0508's requirements in this regard conflict with federal law. *Id.* at 211 (discussing *Arizona* conflict preemption holding).

Based on the foregoing, SB0508 is preempted.

## II. Enforcement of the Challenged SB0508 Provisions Will Cause Irreparable Harm

Upon demonstrating a likelihood of success on the merits, a plaintiff must also establish that, absent the preliminary injunction, there is a likelihood that the defendant's conduct will cause irreparable harm. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "Harm is irreparable if legal remedies are inadequate to cure it." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 545 (7th Cir. 2021).

The challenged provisions under SB0508 are intended to insidiously impede the enforcement of the immigration laws, and they have their intended effect. In so doing, the provisions inflict irreparable harm on the United States and on the strong public interest in enforcement of the immigration laws. *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d. 1211, 1221 (D.C. Cir. 1981) ("[T]he public interest in enforcement of the immigration laws is significant." (collecting cases)).

Without an injunction prohibiting enforcement of the challenged SB0508 provisions, Congress's carefully crafted immigration regime will be unlawfully frustrated. As noted above, Congress designed employment eligibility verification provisions under IRCA to place employers at the front line of ensuring that the workforce is free of unauthorized labor, thereby protecting American workers. The challenged provisions only add administrative costs and burdens to that statutory mandate, and necessarily discourage employers from effectively carrying it out, particularly through participation in E-Verify.

If the Court does not grant this preliminary injunction prohibiting enforcement of the challenged provisions, SB0508 will undoubtedly impede the federal government's chosen policy concerning employment eligibility verification. Furthermore, during the pendency of this action, Illinois employers seeking to avoid SB0508's administrative burdens may be tempted to forgo E-Verify and thereby abandon Congress's safe harbor of presumptive compliance with immigration

23

law. *See* IIRIRA § 402(a)(1). In contrast, the State has no legitimate interest in thwarting the operation of the immigration laws and will suffer no harm whatsoever as a result of an injunction.

Further, if left intact, the challenged provisions of SB0508 would conflict with Congress's instruction that "the immigration laws of the United States should be enforced vigorously and uniformly," *see* IRCA, Pub. L. No. 99–603, § 115(1), 100 Stat. 3359, 338, and would encourage the creation of other state or local laws throughout the United States that seek to restrict or regulate the United States' immigration enforcement efforts, creating a patchwork system of laws severely undermining the "'integrated scheme of regulation' created by Congress," *Arizona*, 567 U.S. at 402; *see also id.* at 395 (immigration is the province of "the national sovereign, not the 50 separate States").

Moreover, because the Constitution granted Congress the power to establish and regulate immigration policy, the challenged provisions create ongoing irreparable harm to the constitutional order. Indeed, the Supreme Court has suggested that irreparable harm inherently results from the enforcement of a preempted state law. *See New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 366-67 (1989) (suggesting that "irreparable injury may possibly be established . . . by a showing that the challenged state statute is flagrantly and patently violative . . . of the express constitutional prescription of the Supremacy Clause"); *United States v. Arizona*, 641 F.3d 339, 366 (9th Cir. 2011) (finding irreparable harm where Supremacy Clause violated); *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058 (9th Cir. 2009) (same).

The challenged provisions irreparably undermine the United States' control over the regulation of immigration and immigration policy, specifically in the area of employment eligibility verification, and thereby interfere with the United States' ability to achieve the purposes and objectives of federal law and to pursue its chosen enforcement priorities. In so doing, they undermine the strong public interest in enforcement of the immigration laws and should be enjoined.

24

### III.  The Balance of Harms and Public Interest Weigh in Favor of Injunction

Lastly, the balance of harms and the public interest both weigh in favor of issuing an injunction. In this case, the hardships to the federal government are significant, especially as compared to the potential impacts that enjoining SB0508 might have on the state of Illinois. Preliminary injunctive relief will provide certainty and guidance to employers in Illinois who want to enjoy the benefits of the E-Verify presumptions. By contrast, the grant of a preliminary injunction will simply return Illinois to the *status quo ante* of just a few months ago, before the law took effect on January 1 of this year. The key point regarding the remaining two preliminary injunction factors is that "the public interest favors applying the federal law correctly." *Small v. Avanti Health Sys., LLC,* 661 F.3d 1180, 1197 (9th Cir. 2011); *see Nken v. Holder*, 556 U.S. 418, 435 (2009). Indeed, "it is *clear that it would not be equitable or in the public's interest to allow the state* to violate the requirements of federal law. . . . In such circumstances, the interest of preserving the Supremacy Clause is paramount." *Arizona*, 641 F.3d at 366 (cleaned up) (emphasis in original).

The goal of SB0508 is to frustrate Congress's desire and ability to protect the workforce from competing against illegal alien labor. Because the challenged provisions hinder the implementation of the INA (and its corresponding regulations), they necessarily harm the federal government, and here, the government does not carry a heavy burden to show significant harm. *Cook Cnty., Illinois v. Wolf*, 962 F.3d 208, 234 (7th Cir. 2020) ("[W]e apply a 'sliding scale' approach in which 'the more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor.'") (citations omitted). As detailed above, the challenged provisions are a direct affront to the regime Congress established to police unlawful immigrants in the workforce. The prospect of interference with federal priorities is a clear burden on the United States, just as the ability to pursue these priorities without interruption from the Challenged Provisions would benefit the public interest.

Conversely, SB0508 was only recently enacted, and thus its enjoining would not harm the state of Illinois but would merely return it to the *status quo ante* of just a few months ago, before the law took effect earlier this year. There is no indication that employers were unable to meet employment eligibility verification goals prior to the enactment of SB0508. Its enactment, however, impedes an employer's ability to verify employment authorization by imposing additional, onerous requirements on employers. These requirements do not benefit or further any interests specific to the state of Illinois but merely restrict its employers in the employment eligibility verification process. There is no prospective harm imposed upon the state of Illinois by enjoining SB0508.

Moreover, an injunction is in the public interest because it would relieve Illinois employers of the added burdens imposed by the challenged provisions in the employee verification process, and in turn, better allow employers to ensure their employees are authorized to work in the United States. Employment authorization and verification ensures that the workforce is free of unauthorized labor, thereby protecting American workers, ensuring American jobs are more readily available to those with authorization to be employed in those positions, and protecting American employers from penalties resulting from employing unauthorized workers. Additionally, by allowing employers greater ease in compliance with the E-Verify program, an injunction would further the ultimate goal of reducing and eliminating unauthorized labor, thereby deterring the prospect of economic opportunities that would otherwise encourage illegal migration. When illegal migration is deterred from the outset, taxpayer funds that are being used to manage illegal migration once it has already occurred, can be allocated toward other beneficial programs. Finally, by reducing the limitations and requirements imposed on employers in ensuring they are in compliance with federal immigration laws, an injunction would encourage the free pursuit of legal economic activities. These are all significant public interest implications that weigh in favor of granting the requested injunction.

## CONCLUSION

In sum, Sections 13(h) and 15(b)–(f) of SB0508 impose civil and criminal sanctions on employers of unauthorized aliens in violation of 8 U.S.C. § 1324a(h)(2). Congress enacted IRCA, a vast and comprehensive framework governing the process of employment eligibility verification, to combat unauthorized alien labor and protect the American worker. The challenged provisions under SB0508 are conflict-preempted by IRCA and improperly occupy a field that the federal government intended to exclusively regulate through IRCA, and the E-Verify provisions codified in IIRIRA. In so doing, SB0508 violates the core principle of federalism whereby the federal and state governments "have elements of sovereignty the other is bound to respect." *Arizona*, 567 U.S. at 398. For these reasons, this Court should grant the United States' Motion and enjoin the challenged SB0508 provisions.

DATED: May 7, 2025                    Respectfully submitted,


YAAKOV M. ROTH                        LUZ M. RESTREPO
Acting Assistant Attorney General     VICTORIA TURCIOS
                                      AYSHA IQBAL
DREW C. ENSIGN                        Trial Attorneys
Deputy Assistant Attorney General     Office of Immigration Litigation
                                      General Litigation and Appeals Section
AARON HENRICKS
Counsel                               By: s/ Elianis N. Pérez
Office of the Deputy Attorney General  ELIANIS N. PÉREZ
                                      Assistant Director
NICOLE P. GRANT                       United States Department of Justice
Senior Litigation Counsel             Office of Immigration Litigation
Office of Immigration Litigation      General Litigation and Appeals Section
General Litigation and Appeals Section P.O. Box 868
                                      Ben Franklin Station
                                      Washington, DC 20044
                                      Telephone: (202) 616-9124
                                      Fax: (202) 305-7000
                                      Email: elianis.perez@usdoj.gov

                                      *Attorneys for the United States*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 7, 2025, I mailed, by Federal Express Mail, the foregoing document to the named Defendants at the following addresses:

State of Illinois, 115 S. La Salle Street, Chicago, IL 60603

Illinois Department of Labor, 160 N. La Salle Street, C-1300, Chicago, IL 60601

Illinois Attorney General, Kwame Raoul, 115 S. La Salle Street, Chicago, IL 60603

Director of the Illinois Department of Labor, Jane Flanagan, 160 N. La Salle Street, C-1300, Chicago, IL 60601

Notice of this filing will be also sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: s/ Elianis N. Pérez
ELIANIS N. PÉREZ
Assistant Director
United States Department of Justice
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 616-9124
Fax: (202) 305-7000
Email: elianis.perez@usdoj.gov

*Attorney for the United States*