# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>STATE OF ILLINOIS; ILLINOIS DEPARTMENT OF LABOR; JANE FLANAGAN, Director of the Illinois Department of Labor, in her Official Capacity; KWAME RAOUL, Illinois Attorney General, in his Official Capacity,<br><br>Defendants. | No. 1:25-cv-04811<br><br>Honorable Judge Sharon Johnson Coleman |

## PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION AND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**Table of Contents**

INTRODUCTION..................................................................................................................1

ARGUMENT .....................................................................................................................2

   I.  The Challenged Provisions are Preempted by Federal Law ........................................2

     A.  Sections 13(h) and 15(b)–(f) of SB0508 Are Expressly Preempted by 8 U.S.C. § 1324a(h)(2)....................................................................................................................2

     B.  Congress Occupies the Field of Administrative Processes Governing Form I-9 Documentation and Inspection, and E-Verify.........................................................5

     C.  Sections 12(c), 13(b)-(e), (h), and 15(b)-(d) are Conflict Preempted Because They Interfere with the Federal Scheme ...................................................................10

  II.  The Remaining Factors Favor Plaintiff's Motion for Preliminary Injunction ...........14

     A.  Plaintiff Has Made a Showing of Irreparable Harm .............................................14

     B.  The Public Interest and Balance of Equities Favor an Injunction ........................16

CONCLUSION..................................................................................................................18

# Table of Authorities

**Page(s)**

**Cases**

*Arizona v. United States,*
    567 U.S. 387 (2012) ............................................................. 15, 16, 17, 18, 23

*Barker v. Kapsch Trafficcom USA, Inc.,*
    No. 119CV00987TWPMJD,2020 WL 2832092 (S.D. Ind. June 1, 2020) ........................... 20

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................................ 19-20

*Chamber of Commerce of the United States v. Edmonson,*
    594 F.3d 742 (10th Cir. 2010) ................................................................ 10

*Chao Chen v. GEO Group, Inc.,*
    287 F. Supp. 3d 1158 (W.D. Wash. 2017) ....................................................... 10

*Department of Commerce v. New York,*
    588 U.S. 752 (2019) ....................................................................... 22

*Encino Motorcars, LLC v. Navarro,*
    584 U.S. 79 (2018) ......................................................................... 8

*HH-Indianapolis, LLC v. Consol. City of Indianapolis & Cty. of Marion, Indiana,*
    889 F.3d 432 (7th Cir. 2018) ................................................................. 22

*Hines v. Davidowitz,*
    312 U.S. 52 (1941) ...................................................................... 12, 15

*Hillman v. Maretta,*
    569 U.S. 483 (2013) ....................................................................... 19

*Illinois Bankers Association v. Raoul,*
    760 F. Supp.3d 636 (N.D. Ill., 2024) ......................................................... 23

*Indiana Fine Wine & Spirits, LLC v. Cook,*
    459 F. Supp. 3d 1157 (S.D. Ind., 2020) ....................................................... 22

*Kansas v. Garcia,*
    589 U.S. 191 (2020) .................................................................... 12, 17-18

*Lackey v. Stinnie,*
    145 S. Ct. 659 (2025) ...................................................................... 8

*Loper Bright Enterprises v. Raimondo,*
    144 S. Ct. 2244 (2024) ..................................................................... 9

*McHenry County v. Raoul,*
  44 F.4th 581 (7th Cir. 2022) ........................................... 18

*Michigan v. U.S. Army Corps of Eng'rs,*
  667 F.3d 765 (7th Cir. 2011) ........................................... 21

*Nken v. Holder,*
  556 U.S. 418 (2009) .................................................... 23

*Joelner v. Vill. of Wash. Park,*
  378 F.3d 613, 620 (7th Cir. 2004) ..................................... 23

*United States v. Alabama,*
  691 F.3d 1269 (11th Cir. 2012) ........................................ 21

*United States v. Arizona,*
  641 F.3d 339 (9th Cir. 2011) .......................................... 20

*United States v. Illinois,*
  2009 WL 662703 (C.D. Ill. Mar. 12, 2009) .......................... 12, 18

*United States v. Whiting,*
  563 U.S. 582 (2011) ................................................... 18

*Valencia v. City of Springfield, Illinois,*
  883 F.3d 959 (7th Cir. 2018) .......................................... 22

*Washington v. GEO Group, Inc.,*
  283 F. Supp. 3d 967 (W.D. Wash. 2017) ................................ 10

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) ..................................................... 20

*Wis. Gas Co. v. FERC,*
  758 F.2d 669 (D.C. Cir. 1985) ......................................... 21

*Zyla Life Scis., L.L.C. v. Wells Pharma of Houston, L.L.C.,*
  134 F.4th 326 (5th Cir. 2025) ......................................... 18

**Federal Statutes**

8 U.S.C. § 1324a ............................................... *passim*

**Federal Regulations**

8 C.F.R. § 274a.2 ........................................ 11, 11-12, 14

48 C.F.R. § 22.18 ..................................................... 15

48 C.F.R. § 52.222-54 ................................................. 15

iv

**State Law**

Illinois Public Act 103-0879 ("SB0508") ............................................................ *passim*

# INTRODUCTION

This Court should grant Plaintiff's Preliminary Injunction and deny Defendants' Motion to Dismiss because certain provisions of the Illinois Right to Privacy in the Workplace Act, which was recently amended by Illinois Public Act 103-0879 ("SB0508"), and is invalid under the Supremacy Clause for three reasons. First, §§ 13(h) and 15(b)–(f) of SB0508 are expressly preempted by 8 U.S.C. § 1324a(h)(2), which prohibits states from imposing civil or criminal sanctions on employers of unauthorized aliens. Defendants' claim that this provision *only* preempts state laws that impose sanctions on employers for hiring unauthorized workers, but this is contradicted by the plain text of § 1324a(h)(2). Second, the structure and scope of 8 U.S.C. § 1324a ("IRCA") and its implementing regulations demonstrate field preemption because Congress has occupied the field with respect to administrative procedures involving Form I-9 documentation, inspections, and the use of E-Verify. The challenged provisions of SB0508—specifically §§ 12(c), 13(b)–(e), (h), and 15(b)–(d)—intrude upon this fully occupied federal domain. Third, these same provisions are conflict preempted because they impose additional requirements and penalties on employers that directly interfere with the comprehensive federal regulatory scheme. Defendants' portrayal of SB0508 as complementary to federal law is both inaccurate and misleading; in practice, SB0508 undermines the uniformity Congress intended through Section 1324a. Moreover, Plaintiff has met its burden to establish irreparable harm, justifying a preliminary injunction against enforcement of these provisions. Granting an injunction serves the public interest by preserving the federal government's exclusive authority over immigration enforcement and avoiding confusion or inconsistency in employer obligations. Accordingly, this court should grant Plaintiff's motion for a preliminary injunction and deny Defendants' motion to dismiss.

**ARGUMENT**

I.      **The Challenged Provisions are Preempted by Federal Law**

   A. **Sections 13(h) and 15(b)–(f) of SB0508 Are Expressly Preempted by 8 U.S.C. § 1324a(h)(2).**

Sections 13(h) and 15(b)–(f) of SB0508 are expressly preempted by 8 U.S.C. § 1324a(h)(2) because they impose both civil and criminal penalties on employers based on the employment of unauthorized aliens. *See* ECF No. 26 at 17–20.[1] According to Defendants, § 1324a(h)(2) *only* preempts state laws that impose sanctions directly on employers for hiring unauthorized workers. ECF No. 26 at 14, 17. This is incorrect.

First, § 1324a(h)(2) plainly preempts the challenged provisions because its imposition of sanctions is premised on the use of federal programs to evaluate whether employees are potentially unauthorized aliens. Defendants argue that § 1324a(h)(2) applies only to state and local laws which impose sanctions on employers *because* they employ unauthorized aliens. ECF No. 26 at 14. "When interpreting a statute, we begin with the text." *Lackey v. Stinnie*, 145 S. Ct. 659, 666 (2025). Section 1324a(h)(2) prohibits "any State or local law imposing civil or criminal sanctions (other than through licensing and similar laws) upon those who employ, or recruit or refer for a fee for employment, unauthorized aliens." The plain language of § 1324a(h)(2) does not limit its application to merely preempting sanctions on employers *for employing* unauthorized aliens. Indeed, "[e]ven if Congress did not foresee all of the applications of [a] statute, that is no reason not to give the statutory text a fair reading." *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 90 (2018) (citing *Union Bank v. Wolas*, 502 U.S. 151, 158 (1991)). If an employer is sanctioned for

_____

[1] Citations to page numbers refer to the ECF pagination.

violating the challenged SB0508 provisions, the use of a federal employment eligibility verification system to evaluate the "employ[ment], or recruit[ment]" of potential "unauthorized aliens" is a but for cause of that violation. 8 U.S.C. § 1324a(h)(2). In fact, SB0508 expressly premises sanctions for a violation on certain uses of the federal "E-Verify program and the Basic Pilot" to evaluate the employment eligibility of employees. SB0508 §§ 12(c), 13. So the text of § 1324a(h)(2) prohibits a state or local government from imposing any civil or criminal sanctions (with the exception licensing and similar laws) on an employer of unauthorized aliens where the local legislation relates to the employment of unauthorized aliens or use of federal employment eligibility verification systems.

Notably, "statutes can be sensibly understood only 'by reviewing text in context.'" *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2261 n.4 (2024) (quoting *Pulsifer v. United States*, 601 U.S. 124, 133 (2024)). Here, the context of § 1324a(h)(2) and SB0508 matter. It would be absurd to suggest that IRCA's express preemption provision operates to "preempt virtually all state employment laws." ECF No. 26 at 16. But it is clear why the provision applies to SB0508. Congress's purpose in enacting IRCA was to combat the employment of unauthorized aliens. *See* H.R. REP. 99-682, 45–46 ("The bill establishes penalties for employers who knowingly hire undocumented aliens, thereby ending the magnet that lures them to this country."). IRCA sets out a comprehensive framework of sanctions on employers who knowingly hire unauthorized aliens and provides for the creation of employment eligibility verification systems. *See generally* 8 U.S.C. § 1324a(e) (IRCA compliance provisions); *id.* § 1324a, note § 401(c)(1), (3) (providing for the establishment of the Basic Pilot Program (E-Verify)). There can be no question that SB0508 is closely related to and attempts to regulate the very same topics as IRCA. Indeed, the law expressly regulates the use of the federal "E-Verify program and the Basic Pilot program, as authorized by 8

U.S.C. 1324a." SB0508 § 12(a). SB0508 imposes requirements on employers' use of employment eligibility verification systems (Section 12), restricts employers' use of the same (Section 13), and imposes sanctions on employers for violations of those uses and restrictions on such federal verification systems (Section 15). The context and close relation of IRCA and SB0508 are important in determining whether IRCA's express preemption provision applies here. This context makes it plain that § 1324a(h)(2) must apply to SB0508.

Second, Defendants argue that § 1324a(h)(2) preempts only state laws which include the employment of unauthorized aliens as an element of the offense. ECF No. 26 at 9, 16. Defendants cite a series of distinguishable cases—primarily from the Ninth Circuit—involving state minimum wage laws. But those cases, including *Washington v. GEO Group, Inc.*, 283 F. Supp. 3d 967 (W.D. Wash. 2017), and *Chao Chen v. GEO Group, Inc.*, 287 F. Supp. 3d 1158 (W.D. Wash. 2017), involved laws that were entirely unrelated to immigration or federal employment verification systems. As the courts in those cases noted, the laws at issue did not mention "immigration status, aliens, or any related term." *GEO Group, Inc.*, 283 F. Supp. 3d at 976. That is not true here. SB0508 expressly regulates how employers use federally created verification tools like the Form I-9 and E-Verify systems. *See* SB0508 §§ 12(c), 13(a), (e)–(g). So, it is not "incidentally" sanctioning employers who may employ unauthorized aliens (ECF 26 at 9), that is its entire aim. Defendants also cite *Chamber of Commerce of the United States v. Edmonson*, in support of their argument that § 1324a(h)(2) preempts only those laws that make employment of an unauthorized alien an element of the offense (ECF No. 16 at 16). 594 F.3d 742 (10th Cir. 2010). But the Court should decline to adopt this particular aspect of the Tenth Circuit's reasoning in *Edmonson* because it ignores the obvious—that SB0508's sanction provisions apply to all Illinois employers, and thus, necessarily apply to those who employ unauthorized aliens. Moreover, given that SB0508's aim is

4

to regulate federally created employment eligibility verification tools, it makes little sense that § 1324a(h)(2) would not apply to preempt the civil and criminal sanctions SB0508 imposes on employers.

Third, Defendants' slippery-slope argument—that interpreting § 1324a(h)(2) broadly would preempt all state employment laws, including wage-and-hour rules or paid leave laws—is a red herring. ECF No. 26 at 16. SB0508 does not simply regulate employment practices generally; it directly and expressly targets how employers use federal immigration verification systems and penalizes employers for actions related to their use. SB0508 §§ 12, 13, 15. Congress designed IRCA to establish a comprehensive and exclusive framework for employment eligibility verification. The challenged provisions squarely undermine that scheme. By contrast, most state laws regulating employment will not directly target and regulate the use of a statutorily established federal program like SB0508 does.

Accordingly, §§ 13(h) and 15(b)–(f) of SB0508 are expressly preempted under § 1324a(h)(2) and therefore cannot stand. Thus, Defendants' arguments fail, and the challenged provisions of SB0508 are unconstitutional under the Supremacy Clause.

### B. Congress Occupies the Field of Administrative Processes Governing Form I-9 Documentation and Inspection, and E-Verify

Additionally, the challenged provisions of SB0508 are field preempted by Congress's comprehensive regime for verifying employment eligibility based on immigration status. Despite Defendants' protestations, § 1324a establishes a detailed scheme for verifying employment eligibility. Employers must follow exact procedures to verify an employee's identity and authorization to work—procedures that are defined down to the specific documents that may be reviewed, the manner in which they must be reviewed, and the legal consequences for errors or omissions. *See* 8 U.S.C. § 1324a(b); 8 C.F.R. § 274a.2. Employers who do not comply face civil

fines ranging from $100 to $1,000 per violation. 8 U.S.C. § 1324a(e)(5). The fact that there are not a ton of words in the statute (ECF 26 at 13) is of no moment. IRCA provides a highly reticulated scheme for verifying work authorization that includes extensive regulations, which Defendants ignore. *See* 8 C.F.R. § 274a.2. These procedures are part of a federally designed and tightly controlled immigration enforcement mechanism.

As the Supreme Court recognized in *Hines v. Davidowitz*, when the federal government establishes a "single-integrated and all-embracing" regulatory system in a field touching on immigration, the states cannot supplement or deviate from it. 312 U.S. 52, 74 (1941). And as *Kansas v. Garcia* reaffirmed, the existence of implied preemption must be assessed by examining the "text and structure" of the federal statute—both of which here make clear that Congress intended to leave no room for state regulation of the administrative verification process. 589 U.S. 191, 208 (2020).

The E-Verify system is also part of this federal scheme. While technically voluntary for most employers, it operates under equally detailed federal rules. 8 U.S.C. § 1324a, notes, Sec. 401–405. Indeed, Congress clearly intended employers to be able to freely participate in the E-Verify program "regardless of the state in which the employer is located." *United States v. Illinois*, 2009 WL 662703, at *2 (C.D. Ill. Mar. 12, 2009) (citing H.R. Rep. 108–304(I), 108th Cong., 1st Sess.2003, at 7 (2003)). As a result, another district court in this circuit enjoined an earlier version of Illinois' Right to Privacy Act because it functionally prohibited the use of E-Verify until the federal government could produce accurate results in a short period. *Id.* The fact that Illinois was just setting additional requirements was "no answer . . . . Congress determined that all employers in the fifty states would be allowed to participate. Illinois cannot say no or require the federal government to meet Illinois' standards." *Id.* The law here is arguably worse. Section 13(b)

expressly states that "[a]n employer shall not impose work authorization verification or re-verification requirements greater than those required by federal law." Since, as Defendants argue (ECF 26 at 22), participation in E-Verify is voluntary for employers, it is not "required by federal law" and is thus banned under the plain text of SB0508.[2] Participation in E-Verify requires adherence to federally prescribed steps—again underscoring Congress's intent to control the entire process by which eligibility is confirmed. This comprehensive structure reflects Congress's intent to occupy the field. Yet Illinois is attempting to highly regulate the use of this system—if not outright ban it.

Defendants argue that SB0508 is not field preempted because it falls within the traditional domain of employment law—a field historically regulated by the states. ECF No. 26 at 17, 19. With respect to the Form I-9 documentation and inspection process, Defendants argue that the challenged provisions under SB0508 are not part of the field of administrative processing governing Form I-9 documentation and inspection; they simply require employers to notify employees of an impending I-9 inspection and/or that "something may be amiss with their work authorization documents." ECF No. 26 at 20-21. But this framing mischaracterizes both the scope and substance of SB0508. Far from merely regulating employment, SB0508 intrudes upon an exclusively federal domain: the administrative processes governing Form I-9 documentation and E-Verify participation, systems Congress created to regulate federal immigration policy. Again, SB0508 expressly targets and regulates these federally created schemes in the inherently federal realm of immigration. *See* SB0508 §§ 12(c), 13(a), (e)–(g). This is contrary to the vast majority of

---

[2] Defendants only argument on this is a footnote linking to an online Frequently Asked Question section that says employers can use E-Verify. ECF 26 at 4, n.5. That is not a binding legal interpretation of the law. Nor do Defendants, or the link they cite, explain how this squares with the plain text of Section 13(b).

garden-variety exercises of state employment authority, such as general minimum wage laws. In going much further, the statute crosses a constitutional line.

Notably, § 13(c) of SB0508 applies to all employment verification systems, including the federally mandated Form I-9 process, and imposes a series of obligations on employers that are neither contemplated nor required by federal law. Specifically, it requires employers who identify discrepancies in an employee's verification information to provide the employee with an explanation of the discrepancy, the original documentation deemed deficient (if requested by the employee or their representative), and—if required by law—instructions for correcting the deficiency and a description of the employee's rights. SB0508 § 13(c). This goes well beyond federal requirements under § 1324a and its implementing regulations, which do not mandate any such notice or corrective guidance. These additional obligations not only burden employers but effectively direct them to advise individuals on how to "fix" problems under a federal verification regime. That is a federal function, not a state prerogative.

Section 13(e) of SB0508 is equally problematic. It compels employers to notify all employees of pending I-9 inspections by federal immigration authorities or other employment record inspections within 72 hours of receiving notice—again, a mandate absent from federal law. SB0508 § 13(e). This requirement directly conflicts with the procedures outlined in 8 C.F.R. § 274a.2 and risks undermining federal enforcement efforts.

While SB0508 may superficially align with certain language from federal E-Verify guidelines, it imposes significant penalties—including civil fines and even potential criminal sanctions—for violations of its state-specific provisions. For example, SB0508 § 15(d)(3) and § 15(d)(4) authorize fines of up to $10,000 for repeated violations, and § 15(e) provides that any violation may constitute a petty offense. These penalties are triggered not by federal violations, but by

noncompliance with the state's independently crafted requirements in an area that Congress has already fully occupied.

Markedly, the additional burdens that the challenged SB0508 provisions place on employers are even more pronounced for those employers that are *required* to use E-Verify. 48 C.F.R. §§ 22.18, 52.222-54, as directed by Executive Order 13465 (Jun. 6, 2008), amending Executive Order 12989 (Feb. 13, 1996), previously amended by Executive Order 13286 (Feb. 28, 2003) (requiring federal contractors to participate in E-Verify). Federal contractors must participate in E-Verify, and the additional requirements and the risk of sanctions under SB0508 are all the more of an intrusion on the federal immigration scheme set out under § 1324a.

This approach is constitutionally impermissible. As the Supreme Court made clear in *Arizona v. United States*, 567 U.S. 387, 402 (2012), states may not impose their own regulatory schemes on matters reserved for federal authority. While states retain broad discretion over employment conditions, they are preempted from regulating the substantive processes of federal immigration verification systems. SB0508 crosses the line from permissible employment regulation into unconstitutional interference with federal immigration enforcement. Its provisions not only create additional and conflicting requirements, but they also threaten to penalize conduct that fully complies with federal law. States may regulate employment conditions, but they cannot independently regulate the mechanics of federal immigration verification systems.

Defendants further assert that field preemption has only been recognized in the narrow context of alien registration statutes. ECF No. 26 at 18 (citing *Arizona*, 567 U.S. at 400–03; *Hines*, 312 U.S. at 74). But this argument misses the mark. The Supreme Court's findings of field preemption in those cases does not negate the principle that when the federal government establishes a comprehensive scheme to regulate a specific aspect of immigration, that scheme preempts

conflicting or supplementary state laws. Here, SB0508 directly conflicts with a federal regulatory regime designed to be uniform and exclusive, thereby triggering field preemption.

Finally, Defendants argue that an express preemption clause—like § 1324a(h)(2)—is a prerequisite for finding a state law preempted. That argument is simply incorrect. As the Court made clear in *Arizona*, "the existence of an express preemption provisio[n] does *not* bar" or narrow "the ordinary working of conflict preemption principles or impose a 'special burden' that would make it more difficult to establish." 567 U.S. at 406 (cleaned up). Courts remain fully empowered to invalidate state laws that interfere with the objectives of a comprehensive federal scheme—even where express preemption is absent. SB0508 does not merely supplement federal employment verification procedures—it intrudes upon a federally occupied field, undermining the uniformity and integrity of the national immigration enforcement system.

### C. Sections 12(c), 13(b)-(e), (h), and 15(b)-(d) are Conflict Preempted Because They Interfere with the Federal Scheme

In addition, the challenged SB0508 provisions are conflict preempted because they interfere with the federal verification system. The provisions seek to directly alter the federal scheme by adding notification and other requirements, as well as civil and criminal sanctions for failure to adhere to those requirements. SB0508's challenged provisions can put aliens who are attempting to work unlawfully on notice that their documents did not check out, that a potential enforcement operation might take place, or alternatively, they can reduce E-Verify participation altogether. The challenged provisions should be deemed preempted because "the challenged state law[s] stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 591 (citing *Arizona*, 567 U.S. at 399) (quotation marks omitted).

Looking at § 1324a and its implementing regulations, Congress was very specific about what it wanted to include within its statutory and regulatory scheme. Congress included very specific

requirements and chose to impose appropriate penalties for failure to comply. Specifically, Congress included criminal penalties for employers who repeatedly hire unauthorized aliens and/or continue to employ them after it is discovered that they are not authorized to work, *id.* § 1324a(f)(1), and escalating civil penalties of up to $10,000 tied to the number of times an employer has violated the provisions (not including the E-Verify provisions). *Id.* § 1324a(e)(4). With respect to E-Verify, an employer that fails to inform DHS that it continues to employ an individual for whom a final nonconfirmation notice was issued faces civil penalties of up to $1,000. *See* 8 U.S.C. § 1324a, note § 403(a)(4)(C)(ii).[3] However, the monetary sanctions under the challenged provisions of SB0508, in particular, reveal a conflict in "method of enforcement" or "conflict in technique" that does not align with the federal scheme. *See Arizona*, 567 U.S. at 406 (stating that conflict preemption can include "conflict in method of enforcement" or "conflict in technique" which could be "fully as disruptive to the system Congress erected as conflict in overt policy.") (citation omitted) (quotation marks omitted). These significant differences between the state and federal statutes should be deemed sufficient alone to warrant a finding of conflict preemption. *Id.* at 403 (observing that state law punished the same conduct as federal law except more severely and stating, "[t]his state framework of sanctions creates a conflict with the plan Congress put in place."); *id.* ("[C]onflict is imminent whenever two separate remedies are brought to bear on the same activity[.]") (citing *Wisconsin Dep't of Indus., Lab. & Hum. Rels. v. Gould Inc.*, 475 U.S. 282, 286 (1986)).

---

[3] Defendants mischaracterize the law when they cite to 8 U.S.C. § 1324a, note § 403(a)(4)(C)(ii) and state "[a] fine may be assessed against any employer that fails to provide notice to an employee upon receiving a [TNC] of the employee's identity or work eligibility." ECF No. 26 at 22. That is not what the section says; rather, it states that an employer could face a fine between $500 and $1,000 per employee if the employer fails to notify the DHS that the employer is still employing an employee that received a final nonconfirmation.

The main focus of the federal immigration scheme embodied in § 1324a is to deter unauthorized employment and to make employers responsible and accountable in that regard—not to protect employees. *See Kansas*, 589 U.S. at 208 ("[Implied preemption] like all preemption arguments, must be grounded "in the text and structure of the statute at issue."); *Arizona*, 567 U.S. at 404 (stating that the goal behind IRCA is to combat the employment of unauthorized aliens). A secondary focus, in service to the primary focus of deterring unauthorized alien labor, is to encourage participation in the E-Verify program. *See United States v. Whiting*, 563 U.S. 582, 609 (2011) (noting Congressional intent to expand and encourage the use of E-Verify); *Illinois*, 2009 WL 662703, at *2 (ruling that Congress wanted employers to join in every state). The challenged provisions of SB0508, which emphasize employee protections above and beyond what is required under § 1324a and its implementing regulations, are not at all in sync with § 1324a's objective to deter unauthorized employment. *Cf. Whiting*, 563 U.S. at 601 (discussing how an Arizona law was not preempted because it "went the extra mile in ensuring that its law closely tracks IRCA's provisions in all material respects" and that it implemented "the sanctions that Congress expressly allowed Arizona to pursue through licensing laws."). And while the federal government "often welcomes state aid in enforcing shared legal norms[,]" *Zyla Life Scis., L.L.C. v. Wells Pharma of Houston, L.L.C.*, 134 F.4th 326, 334 (5th Cir. 2025), the challenged SB0508 provisions do not have shared goals with § 1324a. If anything, the increased requirements and potential penalties will deter adoption of E-Verify by employers, undermining the entire purpose of Congress's scheme. *See Illinois*, 2009 WL 662703, at *2. Indeed, as explained earlier, § 13 of SB0508 arguably *prohibits* the use of E-Verify by employers. That is clearly an obstacle to Congress's scheme. *Id.* (enjoining a similar law).

Defendants seize on stock language to characterize the conflict preemption standard as being more demanding than it is. Defendants cite to *McHenry County v. Raoul*, 44 F.4th 581, 591 (7th Cir. 2022), arguing that the federal government must show that the challenged SB0508 provisions would do "'major damage' to clear and substantial federal interests." ECF No. 26 at 24, 26, 28, 32. The "major damage" phrase appears in *Hillman v. Maretta*, a case where the Supreme Court held that a federal law preempted a state law that involved domestic relations. 569 U.S. 483 (2013). The Supreme Court observed that because there was a presumption against preemption of state laws governing domestic relations, an area that is obviously within the realm of traditional state regulation, such a state law must do "major damage" to "clear and substantial federal interests" before concluding that a state law is preempted. *Id.* at 490-91 (citation omitted) (quotation marks omitted). This higher standard is not applicable here, however, because the challenged SB0508 provisions are not just a state's attempt to regulate employment law but rather, they impermissibly target and regulate an immigration-related federal statutory scheme.

Moreover, that phrase was dicta in *McHenry County*, and the case is entirely distinguishable. In *McHenry County*, plaintiffs challenged a state law that prohibited state agencies and political subdivisions from contracting with the federal government to house immigration detainees. *McHenry County*, 44 F.4th at 586. The Seventh Circuit concluded that the state law was not preempted because the federal law at issue did not eliminate the state's and/or political subdivision's right to refuse to enter into such a contract with the federal government. *Id.* at 591-92. Here, on the other hand, the state law is directly targeting and regulating the federal scheme in ways that clearly undermine its policy aims.

Lastly, while Defendants argue that the conflict that the challenged provisions under SB0508 pose should have been substantiated with evidence (ECF No. 26 at 29), this is not necessary where

the law is designed to conflict with the policies underlying the federal scheme. That is especially true for the provision completely banning the adoption of E-Verify. At a minimum, such evidence is not required to survive a motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (stating that to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."); *see also Barker v. Kapsch Trafficcom USA, Inc.*, No. 119CV00987TWPMJD, 2020 WL 2832092, at *8 (S.D. Ind. June 1, 2020) (stating that the Court only assesses the adequacy of the complaint when considering a 12(b)(6) motion). Additionally, such evidence is not required for a party to meet its burden to show that a preliminary injunction is warranted, as further discussed *infra*, § II.A. Plaintiff has met its burden to withstand dismissal and seek a preliminary injunction.

## II.     The Remaining Factors Favor Plaintiff's Motion for Preliminary Injunction

To obtain a preliminary injunction, a plaintiff "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Plaintiff has made these showings. As just explained, many of SB0508's provisions are preempted by federal law, so Plaintiff is likely to succeed on the merits. The fact that SB0508 violates the Supremacy Clause and undermines key federal immigration laws also establishes that Plaintiff is irreparably harmed and that the public interest and balance of the equities favors an injunction. As such, the Court should grant Plaintiff's motion for a preliminary injunction.

### A.  Plaintiff Has Made a Showing of Irreparable Harm

Plaintiff has sufficiently demonstrated how SB0508 impedes the federal government's chosen policy concerning employment eligibility verification. That is all that is necessary for Plaintiff to

meet its burden to show irreparable harm. *First*, where the party invoking the Supremacy Clause is the United States, and it "[has shown it] is likely to prevail," the Court presumes that "the United States demonstrated that it face[s] irreparable harm." *See United States v. Arizona*, 641 F.3d 339, 366 (9th Cir. 2011). Contrary to the Defendants' suggestion that additional evidence of harm is necessary at this juncture (ECF No. 26 at 33), by establishing that SB0508 constitutes a violation of the Supremacy Clause, the federal government has met its burden. *See United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012)[4]. Because the federal government has demonstrated that SB0508 is expressly preempted by federal law, field preempted, and that it frustrates Congress's objectives, this Court should find that Plaintiff has demonstrated that in the absence of a preliminary injunction, continued implementation of SB0508 will cause the federal government irreparable harm.

Second, despite Defendants' musings, the government is only required to "substantiate the claim that irreparable injury is 'likely' to occur." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). While a showing of irreparable harm "requires more than a mere possibility of harm," it does not "require that the harm actually occur before injunctive relief is warranted." *See Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 787 (7th Cir. 2011). Plaintiff has met this burden by demonstrating the ways in which the amendments are not only preempted by federal law, but also by demonstrating their direct impact on the government's ability to carry out federal law.

---

[4] Defendants meekly suggest this is not the law based on a stray out-of-circuit district court case. ECF 26 at 26. This Court should not start a circuit split based on so little reasoning.

Defendants make much ado about the timing of this lawsuit and argue that preliminary injunctive relief is not appropriate because Plaintiff's delay "undercuts any suggestion that the federal government's harm, if it exists, is truly irreparable." ECF No. 26 at 34. However, it is important to note that the most recent amendments to SB0508 only went into effect in January of 2025, a mere four months before Plaintiff filed suit. The federal government is pursuing new immigration enforcement goals and prudently took the necessary time to assess the impacts of the amendments following their enactment in 2025, ultimately concluding that they merit challenge at this juncture. In the same way that "a court may not set aside an agency's policymaking decision solely because it might have been influenced by political considerations or prompted by an Administration's priorities," *Department of Commerce v. New York*, 588 U.S. 752, 781 (2019), this Court should consider the new administration's shift in priorities when deciding on the issue of any alleged "delay" in filing this lawsuit for the purposes of establishing irreparable harm.

Curiously, Defendants also simultaneously argue that the Plaintiff should have taken additional time to obtain evidence to meet its burden. ECF No. 26 at 33. While the burdensome creation of statistics may be helpful, "such evidence is not required for a party to meet its burden to show that a preliminary injunction is warranted." *HH-Indianapolis, LLC v. Consol. City of Indianapolis & Cty. of Marion, Indiana*, 889 F.3d 432, 437 (7th Cir. 2018); *Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 966 (7th Cir. 2018). As explained, all Plaintiff must do is demonstrate that the challenged provisions are preempted by federal law. Plaintiff has done so.

### B. The Public Interest and Balance of Equities Favor an Injunction

Lastly, the federal government has met its burden to establish that the balance of harms and public interest weigh in favor of issuing an injunction, not only because SB0508 violates the Constitution and is preempted by federal law, but also because it creates barriers to the

implementation of federal immigration law that is intended to protect employers and U.S. citizens by ensuring employees are lawfully hired and employed. *See Indiana Fine Wine & Spirits, LLC v. Cook*, 459 F. Supp. 3d 1157, 1171 (S.D. Ind., 2020) (citing *Joelner v. Vill. of Wash. Park*, 378 F.3d 613, 620 (7th Cir. 2004) ("[s]urely, upholding constitutional rights serves the public interest.")). Indeed, when the government faces an irreparable harm, the public interest "merges" with that factor. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Because the federal government has demonstrated that SB0508 is preempted by federal law, a preliminary injunction is in the public interest. *Illinois Bankers Association v. Raoul*, 760 F.Supp.3d 636, 665 (N.D. Ill., 2024) ("there is also a strong public interest in ensuring the Supremacy Clause is properly effectuated."). And Defendants cannot claim an interest in a law that is in violation of the Supremacy Clause. *Joelner*, 378 F.3d at 620 (explaining that there is no "harm to a [government agency] when it is prevented from enforcing an unconstitutional statute."). Moreover, the practical impact of SB0508 is interference with the regime Congress has established to police unlawful immigrants in the workforce. As such, removing this bar to the federal government's ability to pursue immigration enforcement in the field of employment would benefit the public interest.

On the other side, the Defendants suggest that the State of Illinois will suffer irreparable injury with "judicial interrereference," (ECF No. 26 at 34) but as the Plaintiff has established, the projected harm (if any) in enjoining the challenged provisions is minimal, but the effect of not enjoining the them prevents the federal government from ensuring employers and employees comply with immigration and employment law. Nothing in the Constitution—including the Tenth Amendment—tolerates this result. On the contrary, that is precisely the kind of harm the Framers sought to prevent in crafting the Constitution. *See, e.g.*, *Arizona*, 567 U.S. 387 at 418 (Scalia, J.,

concurring). As such, Plaintiff has established that there are significant public interest implications that weigh in favor of granting the requested injunction.

## CONCLUSION

For these reasons, the Court should grant Plaintiff's preliminary injunction motion and deny Defendants' Motion to Dismiss.

DATED: July 14, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney General

TIBERIUS DAVIS
Counsel to Assistant Attorney General

NICOLE P. GRANT
Senior Litigation Counsel
Office of Immigration Litigation
General Litigation and Appeals Section

LUZ M. RESTREPO
VICTORIA TURCIOS
AYSHA IQBAL
Trial Attorneys
Office of Immigration Litigation
General Litigation and Appeals Section

By: s/ Elianis N. Pérez
ELIANIS N. PÉREZ
Assistant Director
United States Department of Justice
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 616-9124
Fax: (202) 305-7000
Email: elianis.perez@usdoj.gov

*Attorneys for the United States*